The FIRST NATIONAL BANK AND TRUST COMPANY OF ENID, Enid, Oklahoma, Appellee,

v.

Van A. HOLSTON, d/b/a Morris Foods, Appellant.

No. 49404.

Supreme Court of Oklahoma.

Dec. 28, 1976.

Rehearing Denied Feb. 9, 1977.

Tim J. Crowley, Enid, for appellee.

McKeever, Glasser, Conrad & Herlihy by Douglas McKeever, Enid, for appellant.

HODGES, Vice Chief Judge.

This is an appeal from the entry of deficiency judgment against the debtor after the secured creditor conducted a private sale of secured interest in the collateral. The trial court found the parties had stipulated that the form of notice of sale was proper [1] and in accordance with the provisions of the Uniform Commercial Code, 12A O.S.1971 § 9–504(3). [2] The only controversy on appeal is whether the secured creditor conducted the sale of the secured interest in the collateral in a commercially reasonable manner.

---

1. Notice was sent to the debtor and all secured parties. It provided the collateral would be sold "at one or more private sales on or after the 4th day of August, 1975, as provided in the said security agreement."

 The parties stipulated in a journal entry of judgment dated December 1, 1975:

 "Thereupon, the parties hereto stipulated and agreed that the form of notice herein was and is proper and in accordance with the provisions of the Uniform Commercial Code and further stipulated that the issue to be decided herein is whether the said sale was conducted by the plaintiff in a reasonably commercial manner which would entitle plaintiff to the deficiency judgment prayed for herein.

2. It is provided by 12A O.S.1971 § 9–504(3):

 Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor and to any other person who has a security interest in the collateral and who has duly filed a financing statement indexed in the name of the debtor in this state or who is known by the secured party to have a security interest in the collateral. The secured party may buy at any public sale and if the collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations he may buy at private sale.

Van A. Halston, d/b/a Morris Foods, appellant, "debtor," purchased the fixtures and inventory owned by Virgil Morris in February, 1974, for $37,000.00, representing 75–80% of the retail value. A repurchase agreement for the fixtures, in event of default, in the amount of $24,000.00 was made with Virgil Morris. On the 25th day of June, 1975, The First National Bank and Trust Company of Enid, Enid, Oklahoma, "secured creditor," appellee, filed its petition against the debtor, alleging default under the terms and provisions of certain promissory notes and seeking a money judgment and possession of certain collateral pledged as security for the notes by the debtor under the security agreements. On July 11, 1975, the debtor closed his grocery store because the Oklahoma Tax Commission had written him a letter advising that no inventory could be sold because he had not paid his taxes. On July 16, 1975, the court entered an order in replevin and ordered that the secured creditor be granted possession of all the collateral in question for the purpose of disposing of it pursuant to the terms and provisions of the Uniform Commercial Code, 12A O.S.1971 § 9–504. The order was approved by the attorneys for the debtor and the secured creditor. Pursuant to the terms of the order, the secured creditor took possession of the collateral in question and sold it at private sale. A bill of sale was issued on August 20, 1975. Return of sale was filed on September 30, 1975, and the secured creditor renewed its prayer for a deficiency judgment, interest, attorney's fees and costs.

On October 28, 1975, the debtor filed his objection to return of sale of collateral, answer and cross-petition, seeking a denial of the secured creditor's prayer for deficiency judgment, and asking for damages because of the secured creditor's failure to sell the fixtures and inventory in a commercially reasonable manner. To support his assertion appellant argues that the sale was actually made several days prior to the date set in the notice to the debtor. Newspaper advertisements stating the store would reopen under new ownership the day after the private sale was to be held were introduced into evidence.

It is the contention of the secured creditor that the facts support the finding of the trial court that the sale was conducted in a commercially reasonable manner. After the secured creditor was granted possession of collateral on July 16, 1975, it contacted meat distributors concerning institutions which might be interested in the perishable merchandise. The Methodist Home, Enid Memorial Hospital, Holland House and Three Towers purchased produce, meat and dairy products. The bread distributors were contacted and picked up their inventory. Most of these items were sold at 80% of retail. It was undisputed that the normal mark up on inventory is 20%. The secured creditor received $715.82 for the perishable goods. On July 20th, at the request of the secured creditor, Inventory Specialists, Inc. of Oklahoma City inventoried the store. On a retail basis, the inventory totaled $38,-457.39. The secured creditor subsequently determined that the most return on its security could be gained by a sale of the remaining inventory instead of sale of inventory on a piece-meal basis. This was decided after consideration of the monthly rent of $680.00, employee's salary, utilities, advertising, and maintenance of the inventory in saleable condition. The secured creditor contacted the sales manager for Affiliated Foods in an attempt to find prospective buyers for inventory, who referred it to the regional sales manager for Affiliated Foods. A prospective buyer was contacted as the result of these conversations, but he was not able to purchase the business outright and needed financing. The secured creditor did not feel it was in a position to finance the business. Several other grocery store owners in the area were contacted, but no one made an offer to purchase.

An offer to purchase the inventory, after determining further spoilage of perishables, was made by Melvin Hutchison. An offer of $28,000.00 or 74.94% of the retail valuation of inventory was made. The secured creditor checked with persons dealing in

auctions and determined a 15–25% valuation of the inventory retail was the most a piece-meal sale at auction would bring. Notice was given to all secured parties and to the debtor that a private sale would be conducted on or after August 4, 1975. No other advertising was placed in newspapers, handbills or trade journals. A conditional sale was made to Hutchison before August 4, 1975, subject to the Bank not receiving a higher price for the inventory. No other offers were received, and a bill of sale was issued August 20, 1975. Although the debtor had a repurchase agreement with the previous owner for the fixtures at a price of $24,000.00, the secured creditor accepted $8,000.00 less from Hutchison because he agreed to purchase the inventory at 75% of retail. The secured creditor determined there would be more recovery to sell the inventory and fixtures together. The secured creditor received a total of $44,000.00 for inventory and fixtures from Hutchison; $12,775.89 the cash value of inventory held in escrow pursuant to court order, and $7,688.04 recovery on accounts receivable. The total proceeds from sale of assets was $64,459.93, leaving a principal balance owing on the notes of $43,296.67 plus interest. The store was closed twenty-two days before Hutchison reopened the store for business on August 5th.

At the time the debtor purchased the store from Morris he paid 75–80% of retail for the inventory, basically the same amount secured creditor received in its sale to Hutchison. The testimony of the debtor's witness was normally 50% of the inventory price would be recovered if the inventory were sold intact and a little more at auction. The witness did not consider 75% purchase price for inventory to be unreasonable, he considered unreasonable the way "it was closed and handled." No evidence was offered to show that the sale was conducted in a commercially unreasonable manner. The primary objection seems to be that there was a conditional sale to Hutchison prior to August 4, 1975.

■ The policy of the Uniform Commercial Code (UCC) is to provide flexibility in the disposition of collateral,[3] and to encourage disposition by private sale through regular commercial channels. The purpose of Article 9 of the UCC is to attempt to impede dishonest disposition of the collateral without strangling honest transactions with red tape.[4] Before the secured creditor may recover a deficiency judgment, the sale must have been made in a commercially reasonable manner with proper notice, otherwise the debtor may recover damages for commercially unreasonable sale.[5] The requirement that collateral be sold in a commercially reasonable manner seems to signify that the disposition be made in keeping with prevailing trade practices among reputable and responsible business and commercial enterprises engaged in the same or a similar business. The purpose of notice of the intended disposition, whether by public or private sale, is to enable the debtor to protect his interest in the property by paying the debt, interesting potential purchasers in the collateral, or being present at the sale to bid on the property or have others do so to prevent a sacrifice by a sale at less than its true value.[6] In the event of pri-

3. *Brunswick Corp. v. J & P, Inc.*, 424 F.2d 100, 105 (10th Cir. 1970).

4. See Comment to 12A O.S.1971 § 9–504; Hogan, "The Secured party and Defaulty Proceedings under the UCC," 47 Minn.L.Rev. 205, 220 (1962).

5. It is provided by 12A O.S.1971 § 9–507(1):
If it is established that the secured party is not proceeding in accordance with the provisions of this Part disposition may be ordered or restrained on appropriate terms and conditions. If the disposition has occurred the debtor or any person entitled to notification or whose security interest has been made known to the secured party prior to the disposition has a right to recover from the secured party any loss caused by a failure to comply with the provisions of this Part. If the collateral is consumer goods, the debtor has a right to recover in any event an amount not less than the credit service charge plus ten percent of the principal amount of the debt or the time price differential plus ten percent of the cash price.

6. *O'Neil v. Mack Trucks, Inc.*, 533 S.W.2d 832 (Tex.Civ.App.1976); *Mallicoat v. Volunteer Fi-*

vate sale, all that is required is reasonable notification of the time after which any sale or other intended disposition is to be made.[7] In case of a public sale, however, it must state the date, time, place, method of sale, and description of the property.[8] If the debtor objected to the propriety of the secured creditor's procedure for obtaining satisfaction of the debt on default, he could have sought a restraining order under 12A O.S.1971 § 9–507(1).[9] This was not done, nor was there an offer made or evidence presented showing that a greater amount could have been received from prospective purchasers known to the debtor.

 The burden of proof as to the commercial reasonableness of a sale is generally placed upon the secured party conducting the sale where the secured party is seeking a deficiency judgment.[10] However, where the debtor proceeds against the secured party to recover his loss caused by a failure by the secured party to proceed pursuant to the UCC, the debtor carries the burden of proof.[11] Where the sale of collateral is conducted in compliance with the UCC, the sale of collateral is evidence of market value.[12]

 It appears the inventory was sold at market value and although the fixtures were sold for $8,000.00 less than could have been obtained under the repurchase agreement, this was necessary in order to procure a purchaser for all the collateral. The secured creditor is not bound to honor the debtor's contracts with third parties. The reasonableness of sale of collateral by the secured party is determined by the manner in which the sale is conducted, not by the price ultimately received for the collateral.[13] The court in *In Re Zsa Zsa Ltd.*, 352 F.Supp. 665, 671 (S.D.N.Y.1972) *aff'd*, 475 F.2d 1393 (2nd Cir. 1973) said:

> "The language of § 9–507 reveals that the primary focus of commercial reasonableness is not the *proceeds* derived from the sale but rather the *procedures* employed for the sale. If the secured creditor makes certain that conditions of the sale in terms of aggregate effect of the manner, method, time, place and terms employed conform to commercially accepted standards, he should be shielded from the sanctions contained in Article 9."

The secured party is required to utilize his best efforts to sell the collateral for the best price and to have a reasonable regard for the debtor's interest. The commercial realities are that the secured creditor will generally try to obtain the highest possible price for collateral since recovery of any deficiency is usually dubious.[14] He is not, however, required to anticipate the course a

nance & Loan Corp., 57 Tenn.App. 106, 415 S.W.2d 347 (Tenn.App.1966). Seigel, "Commercial Reasonableness In Sales of Collateral," 49 L.A. Bar Bull. 9, 11 (1973).

7. *Associates Discount Corp. v. Forcier*, 5 UCC Repts. 294 (1968). 12A O.S.1971 § 9–504(3) text set out in Note 2, supra.

8. *DeLay First National Bank & Trust Co. v. Jacobson Appliance Co.*, 196 Neb. 398, 243 N.W.2d 745 (1976).

9. See Note 5, supra.

10. Stinson, "Secured Transactions: Commercial Reasonability of Secured Party's Sale of Collateral After Default Under UCC § 9–504(3)," 29 Okla.L.Rev. 486, 498 (1976). Annot., "Uniform Commercial Code: Burden of Proof As To Commercially Reasonable Disposition of Collateral," 59 A.L.R.3d 369 (1974).

11. *Transport Equipment Co. v. Guaranty State Bank*, 518 F.2d 377, 384 (10th Cir. 1975). See also *Pruske v. National Bank of Commerce of San Antonio*, 533 S.W.2d 931, 935 (Tex.Civ. App.1976); *Tarrant Savings Assoc. v. Lucky Homes, Inc.*, 390 S.W.2d 473 (Tex.1965); *Fryer & Willis Drilling Co. v. Oilwell, Division of U. S. Steel*, 472 S.W.2d 857 (Tex.Civ.App.1971) rev'd on other grounds, 493 S.W.2d 487 (Tex. 1973); *Bank of Gering v. Glover*, 192 Neb. 575, 223 N.W.2d 56 (1974).

12. *Universal C.I.T. Credit Co. v. Rone*, 248 Ark. 665, 453 S.W.2d 37 (1970).

13. *James Talcott, Inc. v. Reynolds*, 529 P.2d 352 (Mont.1974).

14. Seigel, "The Commercially Reasonable Disposition of Collateral," 80 Comm.L.J. 67, 71 (1975).

market will take. If the secured party sells the collateral in the usual manner in any recognized market, or if he sells at a price current in the market at the time of his sale, or if he has otherwise sold in conformity with commercially reasonable practices among dealers in the type of property sold, he has sold in a commercially reasonable manner. The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner.[15] A return of 75–80% on inventory is the going market rate and is in fact the amount the debtor paid when he purchased the store. The debtor made no attempt to restrain the sale, or secure other buyers. There was no evidence the debtor was damaged by the way the sale was conducted, or that a higher price could have been obtained by utilization of a different format. A review of the facts reveals the secured creditor utilized its best effort to reasonably regard the debtor's interest by preserving the collateral, properly disposing of perishable inventory, and selling the collateral at the best available price. There is no evidence to substantiate the sale was not commercially reasonable, and there is competent evidence to substantiate it was conducted in a commercially reasonable manner.

AFFIRMED.

WILLIAMS, C. J., and DAVISON, IRWIN, BERRY, LAVENDER, BARNES and SIMMS, JJ., concur.

DOOLIN, J., dissents.

---

15. *Foster v. Knutson*, 84 Wash.2d 538, 527 P.2d 1108, 1114 (1974). 12A O.S.1971 § 9–507(2).