**WILKERSON MOTOR COMPANY, INC.,**
a corporation, Appellant,

v.

**Mike E. JOHNSON, Appellee.**

**No. 49450.**

Supreme Court of Oklahoma.

Jan. 31, 1978.

Rehearing Denied April 5, 1978.

John B. Wimbish, Ungerman, Grabel & Ungerman, Tulsa, for appellant.

C. Rabon Martin, Baker, Baker & Martin, Tulsa, for appellee.

IRWIN, Justice.

Wilkerson Motor Company, Inc., (appellant) commenced proceedings to recover a deficiency judgment against Mike E. Johnson (appellee). The alleged deficiency resulted in the sale by appellant of a repossessed automobile belonging to appellee. Appellee filed a cross petition. Appellant appeals from jury verdict and judgment in favor of appellee for money damages and an attorney fee arising out of appellant's alleged failure to dispose of the repossessed automobile in a commercially reasonable manner. Although the case was litigated fully and submitted to the jury, there is practically no dispute between the parties as to the material facts of the case.

Appellee purchased from appellant an automobile and executed a retail installment sales contract and security agreement giving automobile as collateral. Appellee subsequently defaulted and appellant lawfully repossessed the automobile under the provisions of the security agreement. Thereafter, appellant gave appellee written notice by mail of its intention to sell the automobile at sale at a date and time specified in the notice. In addition, the parties stipulated appellant gave notice of the sale by posting the identical notice previously mailed to appellee "in three (3) public places." [1]

No other notice or advertisement of the sale was made or attempted by appellant. Sale was held at the date and time specified in the notice to appellee. No purchasers, other than appellant, attended the sale or entered bids. Appellant "bought in" the automobile for $2,000.00. The parties stipulated that at the time of the sale the National Auto Dealers Association's "blue book" wholesale valuation on the automobile was $2,575.00.

The jury returned a verdict denying appellant recovery on its prayer for a deficiency and awarding appellee $982.82 in damages on his cross petition.[2] Trial court

---

1. Stipulation reads in pertinent part:

   "[On] 13th day of september [notice] was posted in three (3) public places to wit: a telephone pole near the South entrance of the alley between West Third Street and West Fourth Street and between Boulder and Cheyenne Streets [Tulsa, Oklahoma]. A utility pole in the alley near the North entrance of the alley between West Third Street and West Fourth Street and on the wall of the Wright Building between and on the side between West Second Street and West Third Street."

2. There is no dispute between the parties as to the amount of appellee's recovery should appellant's be liable for not proceeding in accordance with § 9–501 et seq., supra. The figure $982.82 is the minimum amount appellee would be entitled to recover under 12A O.S.1971 § 9–507(1), which states: "[I]f the collateral is consumer goods, the debtor has a right to recover in any event an amount not less that the

awarded appellee an attorney fee in the amount of $2,250.00 and entered judgment for that amount plus the amount of the jury's verdict.

Appellant first asserts that the trial court's instruction No. 3 constitutes reversible error. Appellant argues the instruction is erroneous in that under the instruction no sale of a repossessed automobile is "commercially reasonable" unless the secured party sells the automobile in the same manner as other used automobiles are generally sold by automobile dealers, i. e., appellant argues, by placing the automobile in inventory and selling it at private sale, and offering the same inducements to purchase, such as a trade-in and financial arrangements. Trial court's challenged instruction No. 3 states:

> "You are instructed that, for a sale to be commercially reasonable, the property to be foreclosed must be sold in a manner that similar property is sold in the ordinary course of business in the community, by persons who are in the ordinary business of selling such property. In determining if the sale in this case was conducted in the manner that automobiles are sold in the ordinary course of business in this community, you are further instructed that you are not to consider the manner in which Plaintiff (appellant), and other persons in the business of selling automobiles, conduct foreclosure sales; but, rather, you should consider only such sales as are conducted in the ordinary course of business."

The foregoing instructions were patterned after certain language in the Oklahoma Code Comments to 12A O.S.1971, § 9–504, to the effect that "if an automobile, for example, is being foreclosed it must be sold in a manner automobiles are sold by people in the business of selling automobiles." However, the above instruction

failed to recognize additional language in the Comments that "There may be several different manners of sale of the automobile which would each be 'commercially reasonable'. * * * "

Neither the Oklahoma Code Comments [3] nor the Official Uniform Commercial Code Comments [4] are part of the statute. Both have been employed at one time or another by bench and bar as important interpretative tools. Each is intended to serve a different primary function. The Oklahoma Code Comments direct the reader's attention to prior Oklahoma statutory and case law in an effort to assist in a critical evaluation of how the Uniform Commercial Code (UCC) has or has not initiated change. The Official Code Comments are the work of the original drafters of the UCC and are intended to illuminate their thinking so that the underlying policies of the UCC can be properly construed and implemented.

The clear intent of the applicable provisions of the UCC is to allow the repossessing secured party substantial flexibility as to the method chosen to dispose of the collateral. *Brunswick Corp. v. J. and P. Inc.*, 424 F.2d 100 (10th Cir. 1970).

Although other options are available to dispose of repossessed property other than by sale, if the secured party does dispose of the repossessed property by sale, whether public or private, the sale must conform to the requirements of 9 ·504(3), supra, which in pertinent part, states:

> "Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is

credit service charge plus ten per cent of the principal amount of the debt . . ."

**3.** Oklahoma Code Comments were originally prepared by the late Professor William R. Bandy of the University of Oklahoma, and were subsequently updated and revised by Robert L. Cox of the Oklahoma City Bar.

**4.** Official Uniform Commercial Code Comments are the product of a combined effort on the part of the American Law Institute and the National Conference of Commissioners on Uniform Laws, under whose joint auspices the Uniform Commercial Code was originally drafted.

perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor. . . . The secured party may buy at any public sale and if the collateral . . ."

Under prior existing Oklahoma statutory enactment, the holder of a chattel mortgage could foreclose on his collateral and dispose of it by public sale only. 46 O.S.1961, §§ 51, et seq., repealed by 12A O.S.1971, § 10-102, of the UCC. The express purpose of the drafters of the UCC was to permit the secured party the option of a private sale. "Although public sale is recognized, it is hoped that private sale will be encouraged where, as is frequently the case, private sale through commercial channels will result in higher realization on collateral for the benefit of all parties." 12A O.S.1971, § 9–504, Official Uniform Commercial Code Comment, No. 1. The only limiting requirements of the UCC on either method of selling repossessed collateral are those of notice to the debtor and the requirement that all aspects of the sale, public or private, be "commercially reasonable".

■ The trial court's statement in instruction No. 3, "that, for a sale to be commercially reasonable, the property to be foreclosed must be sold in a manner that similar property is sold in the ordinary course of business in the community, by persons who are in the ordinary business of selling such property", left the jury with the impression that as a condition precedent to any sale of an automobile being "commercially reasonable" it must be sold in a manner that similar property is sold in the ordinary course of business. The instruction denied appellant the flexibility afforded it as a secured party under the UCC, and was inapplicable to the facts of the case at bar.

■ However incorrect the instruction may have been, a judgment will not be disturbed because of an erroneous instruc-

tion unless it appears that the jury was misled thereby, resulting in prejudice to the complaining party. *Missouri-Kansas-Texas Railroad Co. v. Harper*, Okl., 468 P.2d 1014 (1970). Whether the erroneous instruction mislead the jury or resulted in prejudice to the appellant is determined in the case at bar by resolution of the fundamental issue presented, to-wit: Was there an issue of fact for presentation to the jury concerning whether appellant acted in a commercially reasonable manner in disposing of the repossessed automobile?

■ What is commercially reasonable within the context of the UCC is not specifically defined. Rather than setting forth a hard and fast rule as to commercially reasonable conduct, the UCC merely establishes certain guidelines by which commercial conduct can be measured to judge its reasonableness. 12A O.S.1971, 9-507, Official Uniform Commercial Code Comment, No. 2. Those guidelines are set out in 12A O.S. 1971, § 9-507(2), which states in pertinent part:

"(2) The fact that a better price could have been obtained by a sale in a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner. If the secured party either sells the collateral in the usual manner in any recognized market therefore or if he sells at the price current in such market at the time of his sale or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold he has sold in a commercially reasonable manner. . . ."

The standard of commercial reasonability is predicated on two concepts prevalent throughout the UCC. All commercial transactions are required to be conducted in "good faith". " 'Good faith' means honesty in fact in the conduct or transaction concerned." 12A O.S.1971, § 1–201(19). Commercial matters should be, if at all possible, resolved by means normally employed for handling such matters in the business in-

volved, so long as the means deals fairly with all parties. Generally, the secured party acts in a commercially reasonable manner when in the process of disposing of repossessed security he acts in good faith and in accordance with commonly accepted commercial practices which afford all parties fair treatment.

The Supreme Court of Washington in *Foster v. Knutson*, 84 Wash.2d 538, 527 P.2d 1108 (1974) said that conduct of a public sale did not conform to commercially reasonable practices unless the notice was:

"(1) . . . given . . . to the public sufficiently in advance to allow interested bidders a reasonable opportunity to participate, (2) given to a 'public' reasonably expected to have an interest in the collateral to be sold and notifying the public of the exact time and place of the sale reasonably convenient to potential bidders, (3) in a manner reasonably calculated to assure such publicity that the collateral will bring the best possible price from the competitive bidding of a lively concourse of bidders."

■ The notice of public sale in the case at bar was posted on two utility poles in two alleys and on the side of a building. The comptroller Vice President of appellant, who had been with appellant for ten years, testified that he was unable to recall that appellant had ever advertised the sale of used cars, other than a repossession, in this manner. The manner in which appellant disseminated notice to the public of the impending "public sale" was so woefully inadequate that it cannot be said the sale as a whole was "commercially reasonable". The essence of any "public sale" is that members of the potential class of purchasers have some meaningful opportunity to become apprised of the fact the goods are to be sold. Gilmore, *Security Interests in Personal Property*, (1965), p. 1242.

We do not here hold that posting of notice of sale is a per se commercially unreasonable method by which to give notice of sale. Circumstances can be envisioned where notice posted in a conspicuous manner at a location where significant numbers of potentially interested purchasers might congregate or pass would suffice as adequate notice of the sale. In those circumstances, the question of commercially reasonable notice of public sale would be an issue of fact for the jury. We do not feel, however, that the posting in the case at bar can be considered as even approaching satisfaction of the requirement that notice be given "in a manner reasonably calculated to assure such publicity that the collateral will bring the best possible price from the competitive bidding of a lively concourse of bidders." We hold as a matter of law that the manner in which appellant attempted to give notice of sale of the repossessed automobile was not commercially reasonable. The trial court's erroneous instruction did not prejudice appellant's rights and does not constitute reversible error.

Appellant's second proposition was that the trial court should have sustained its motion for a directed verdict on its petition for a deficiency judgment. This argument is predicated on an asserted absence of evidence to support recovery by appellee on his cross petition. As illustrated by the foregoing discussions, the contention is without merit.

■ Finally, appellant contends the trial court's award of attorney fee was excessive and unsupported by the evidence. Appellant's original petition was for a deficiency judgment upon default of a retail installment sales contract. Award of attorney fees is statutorily authorized for the prevailing party in actions for recovery on a note or contract for the sale of goods and is addressed to the sound discretion of the trial court. 12 O.S.1971, 936. Evidence relating to award of attorney's fee was heard at time of hearing on appellant's motion for a new trial. It appears from trial court's order and supporting affidavits in the record that appellant waived stenographic recording of those proceedings. The only evidence in the record relating to attorney fees is supportive of the trial court's award. In the absence of some record of the evidence which could be reviewed to determine whether the trial court abused its discretion

as to the size of the award, we see no reason to disturb the trial court's decision.

JUDGMENT OF THE TRIAL COURT AFFIRMED.

LAVENDER, V. C. J., and WILLIAMS, BERRY and DOOLIN, JJ., concur.

HODGES, C. J., and BARNES and SIMMS, JJ., concur in part and dissent in part.