GRUMMAN CREDIT CORPORATION,
Appellee,

v.

RIVAIR FLYING SERVICE, INC., an
Oklahoma Corporation, Walter Kostich
and Marguerite Kostich, Appellants.

No. 72821.

Supreme Court of Oklahoma.

Sept. 29, 1992.

David L. Weatherford, Ungerman & Iola, Tulsa, for appellee.

Charles Davis, Collinsville, for appellants.

SUMMERS, Justice.

The question here is whether there was competent evidence to support the jury's verdict that plaintiff's sale of a repossessed airplane was done in a "commercially reasonable" manner. The trial court found that there was and entered the requested deficiency judgment against the defendant borrower. The Court of Appeals concluded otherwise and reversed the jury-based judgment as a matter of law. On certiorari we reinstate the judgment entered below.

Grumman Credit Corporation financed the purchase of a 1977 Grumman American Cheetah airplane by Rivair Flying Service and retained a security interest in the aircraft. In 1986 Grumman decided to repossess the aircraft because Rivair had ceased making payments. In an attempt to settle the matter, the attorney for Rivair sent a letter to Grumman stating that in its current condition the airplane was worth between $5000.00 and $7000.00. He also advised that the airplane needed an engine overhaul, interior work, exterior paint and the replacement of the radio. Rivair offered to do the repair work if Grumman would delay the repossession of the airplane.

This settlement offer was refused and Grumman continued its efforts to repossess the airplane. It hired Mid–Continent Aircraft for that purpose. Grumman had dealt with Mid–Continent in the past for other repossessions, and gave Mid–Continent the authority to repair the airplane or to disassemble and move it to another location for resale. When Mid–Continent's mechanics arrived at Rivair they discovered that the plane was not flyable in its present condition. For cost reasons, Mid–Continent decided to remove the wings of the plane and transport it to its own place of business in Missouri for resale.

After this transport was accomplished the plane was advertised in a well-known aircraft magazine, and Grumman contacted several possible buyers. Grumman received eight bids, and accepted the highest in the sum of $6100.00. Grumman applied this amount to the outstanding loan balance, and then sought a judgment for the deficiency against Rivair and its owners, who had guaranteed the note. Defendants sought and were granted a trial by jury.

At trial the single question was whether Grumman had acted in a commercially reasonable manner as required by the Uniform Commercial Code, specifically, 12A O.S.

1991, § 9–504(3)[1]. Rivair urged that the sale of the airplane without its logs and disassembled was not commercially reasonable. Grumman disagreed. The president of Grumman testified that repair of the plane was considered but rejected because of the cost. He also testified that Grumman had used the services of Mid–Continent prior to this occasion for other repossessions. Mid–Continent is a small company in the business of selling and repairing small aircraft. After the repossession, the president discussed the option of repair with the chief mechanic at Mid–Continent. The mechanic stated that the cost of repair would be approximately $8000.00.

Grumman's president also testified that none of the bidders had inquired about the log books. He stated that he had been involved in the repossession and sale of ten to twelve airplanes. Of those, none of the "pleasure aircraft" had been sold with log books. He also testified that only the wings of the plane had been disassembled for transport, and that the remaining portion of the airplane was sold assembled.

As support for its argument, Rivair relied on the testimony of its expert that the logs are a valuable asset in the resale of an airplane. The expert testified that the value of an airplane would be dramatically decreased if the logs were not provided. He also testified that a disassembled airplane was worth less. The expert stated that a similar airplane, assembled, with logs in flying condition, was worth between $9000.00 and $13,000.00. Kostich, the owner of Rivair, did not dispute the fact that the current condition of the plane made it unflyable, but testified that the airplane could have been made flyable with as little as four or five hours of work. He also testified that he had the log books but was never asked for them, and did not volunteer to provide them to Grumman.

Grumman countered this argument by introducing partial logs of the plane which showed that it had not been inspected, as required by the F.A.A., in over three years. Thus Grumman urged that even if the airplane had been repaired, it could not have been flown legally because of the failure to be current in inspections. Grumman introduced the letter mentioned above to contradict Kostich's testimony that the plane could be flyable with minimal work, and that the airplane was worth more than the amount for which it was sold.

The jury heard this evidence and returned a general verdict which stated that they "found the issues for the plaintiff Grumman Credit Corp." The trial judge accepted these findings and rendered judgment against Rivair and its owners for $12,653.17 principal plus $4,177.03 interest, to be offset by $6,100.00 for the resale of the airplane. Rivair and its owners appealed. The Court of Appeals reversed, finding that Grumman failed as a matter of law to establish that the sale was conducted in a commercially reasonable manner. Grumman sought certiorari here, and we have granted its petition.

Our standard of review requires affirmance of the trial court's judgment if there is any competent evidence to support the jury's verdict on which it is based.

1. 12A O.S.1981 § 9–504(3):

 Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be *commercially reasonable.* Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor if he has not signed after default a statement renouncing or modifying his right to notification of sale. In the case of consumer goods, no other notification need be sent. In other cases, notification shall be sent to any other secured party and any holder of a subordinate lien from whom the secured party has received, before sending his notification to the debtor or before the debtor's renunciation of his rights, written notice of a claim of an interest in the collateral. The secured party may buy at any public sale and, if the collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations, he may buy at private sale. (emphasis added)

*Walker v. St. Louis–San Francisco Railway Co.,* 646 P.2d 593, 597 (Okla.1982). Here, the jury rendered a general verdict. "A general verdict is that by which they pronounce generally upon all or any of the issues, either in favor of the plaintiff or defendant." *Bane v. Anderson, Bryant & Co.,* 786 P.2d 1230, 1235 (Okla.1989) *quoting* 12 O.S.1981 § 587. "[A] general verdict of a jury constitutes a finding of every material fact necessary to support it, and is conclusive as to all disputed facts and conflicting statements." *Id.*

■ With this in mind, we turn to the question of what is required for a "commercially reasonable" sale. In *Wilkerson Motor Co. v. Johnson,* 580 P.2d 505 (Okla.1978), the creditor repossessed and sold the collateral in which creditor held a security interest, and sought a judgment for the deficiency. Relying on the policy and purposes of the U.C.C., we held that it is the clear intent of the applicable statutes to allow the repossessing secured party substantial flexibility as to the method chosen to dispose of the collateral. *Id.* at 507. The only limitation placed on the repossessing creditor is that notice be given to the debtor and that the sale be commercially reasonable. We said "the secured party acts in a commercially reasonable manner when, in the process of disposing of repossessed security, he acts in good faith and in accordance with commonly accepted commercial practices which afford all parties fair treatment." *Id.* at 509.

■ A definition of "commercially reasonable" is not provided by the U.C.C. Remembering that the idea of Article 9 is to "impede dishonest disposition of the collateral without strangling honest transactions with red tape," *First Nat'l Bank v. Holston,* 559 P.2d 440, 443 (Okla.1977), we observe that certain guidelines are set out by which the commercial reasonableness of a sale may be judged. Section 9–507(2) provides that:

> The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale

was not made in a commercially reasonable manner. If the secured party either sells the collateral in the usual manner in any recognized market therefor or if he sells at the price current in such market at the time of his sale or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold, he has sold in a commercially reasonable manner....

The requirement of a commercially reasonable sale implies that the disposition of collateral be made in line with prevailing trade practices among reputable business and commercial enterprises engaged in a similar business. *Holston,* 559 P.2d at 443. When the secured party is seeking a deficiency judgment, the burden of proof is on the secured party to show the commercial reasonableness. *Id.* at 444. Where material facts are in controversy trial by jury is an appropriate method to resolve the question of whether the creditor's sale was commercially reasonable. 12 O.S.1981 § 556; *Wilkerson Motor Co. v. Johnson, supra.*

■ Rivair cites *Sunjet Inc. v. Ford Motor Credit Co.,* 703 S.W.2d 285 (Tex.App. 1985) as authority for the proposition that the sale of the aircraft without log books was not commercially reasonable. In *Sunjet,* the creditor repossessed the aircraft and held a public sale. At the sale the creditor declined to make the log books available, declined to demonstrate the airworthiness of the aircraft and declined to start the engines. Considering this and the lack of expert testimony regarding the commercially reasonableness of the sale, the appellate court held that the creditor had not met its burden of proof.

Rivair also cites cases for the proposition that the reasonableness of the sale is determined by the procedures used, and that the procedures must meet the standards of the industry. It relies on *Connex Press Inc, v. Internat'l Airmotive,* 436 F.Supp. 51 (D.C.D.C.1977); *C.I.T. Corp. v. Lee Pontiac, Inc.,* 513 F.2d 207 (9th Cir.1975) and *Bank of Oklahoma v. Little Judy Ind.,* 387 So.2d 1002 (Fla.Ct.App.1980). Here, Rivair claims that by selling the airplane without log books and in a disassembled

condition, the circumstances show a commercially unreasonable sale.

We have no disagreement with the cases cited by Rivair, but the facts are so dissimilar as to be distinguishable. In *Connex*, the plaintiff creditor was the only bidder in a sale of an aircraft repossessed from the debtor. The creditor took only minimal steps to advertise the sale and in fact did not use advertising methods accepted in the industry. The creditor did not attempt to repair minor problems and refused to allow inspection of the plane. In fact, it had pledged the aircraft as collateral for a loan even before the sale was held. The creditor purchased the aircraft at one-third of its fair market value. Considering all these circumstances, the court held that the sale was commercially unreasonable. Similarly in *Sunjet*, the determination by the court that the sale was not commercially reasonable was based not only on the creditor's refusal to provide the log books but also on the creditor's refusal to demonstrate the plane's air worthiness and to start the engines.

In *Little Judy*, the plaintiff failed to introduce any evidence as to what steps were taken to sell the plane. Specifically, the trial court found that plaintiff had failed to meet its burden of proof in showing how the broker proceeded with the sale and how the sale conformed to industry practices.

In *C.I.T.*, the sale of two airplanes was upheld as commercially reasonable. There the creditor placed notice of the sale in "Trade-a-Plane" magazine as well as two other news sources. The creditor also notified prospective buyers. The evidence of the fair market value of the airplanes was conflicting, but the Circuit Court determined that the District Court had the opportunity to judge the credibility of the witnesses and that the findings were not clearly erroneous. *Id.* at 209.

In the present case the evidence showed that the sale likewise was advertised in "Trade-a-Plane," a well-recognized aircraft magazine. Grumman also contacted several prospective buyers. At least eight bids were received. The log books were not available because Rivair did not offer them to Grumman before the sale. No bidders requested to see the logs. Although disputed, there is evidence that neither the absence of log books nor the disassembled state of the plane reduced the selling price. Grumman's president testified that the airplane was not repaired because the cost of repair would have been too much under the circumstances. Rivair presented no evidence to contradict the estimated cost of repair ($8,000.00) stated by Grumman. Furthermore, the log books indicated that the plane could not have been flown legally, as it had not been inspected in three years. The evidence regarding the market value of the plane was controverted, but the jury had before it the letter of Rivair's own attorney stating that the plane's value, as is, was between $5000.00 and $7000.00. It brought $6,100.00.

 Certainly the Commercial Code requires a secured party seeking a deficiency judgment to act in good faith, in fairness to all, and in accord with commonly accepted commercial practice. *Wilkerson, supra.* But the fact that a better price might have been obtained by a sale under different circumstances does not make the sale commercially unreasonable. *Piper Acceptance Corp. v. Yarbrough*, 702 F.2d 733, 735 (8th Cir.1983). And it has been held that a creditor is not, as a matter of law, "required to repair, improve, or otherwise spruce up collateral before it is sold." *CIT Corp. v. Duncan Grading and Construction, Inc.*, 739 F.2d 359, 361 (8th Cir. 1984).

Evidence upon the commercial reasonableness, or lack of it, as to Grumman's resale was presented by both parties at trial. There are no objections to the instructions given the jury. We conclude that the case was fairly submitted to the jury, and that there is competent evidence to support the verdict that the sale was conducted in a commercially reasonable manner according to Sections 9–504(3) and 9–507(2). The sum obtained was in line with the value placed on the plane in Rivair's letter. Although price alone will not determine the commercial reasonableness

of a sale, the totality of the circumstances surrounding this sale supports a judgment based on the verdict.

The opinion of the Court of Appeals is vacated. The judgment entered by the District Court pursuant to jury's verdict is affirmed. .

OPALA, C.J., HODGES, V.C.J., and LAVENDER, SIMMS, HARGRAVE, ALMA WILSON and WATT, JJ., concur.