In the Matter of STACY W., an alleged deprived child.

No. 52597.

Court of Appeals of Oklahoma, Division No. 2.

Nov. 12, 1980.

Released for Publication by Order of Court of Appeals Dec. 18, 1980.

Richard Vallejo, Oklahoma City, for appellant.

Jerry C. Blackburn, Oklahoma City, for appellees.

BRIGHTMIRE, Presiding Judge.

It was reported to the authorities in the spring of 1978 that little four-year-old Stacy W. was being abused. An investigation disclosed he had been beaten by his mother's boyfriend and this accounted for a number of bruises over his body and a cut on his forehead. Soon this proceeding was filed by the State of Oklahoma asking the court to declare the child to be a deprived one, make him a ward of the court and terminate the parental rights of the child's mother.

An adjudicatory hearing was held July 5, 1978 at the conclusion of which the court found the boy to be a deprived child, declared him to be a ward of the court and placed his custody in his father under the supervision of state personnel. The court also ordered the mother and step-father[1] to "continue with counselling [sic]" and continued the matter to December 15, 1978 "for review."

It is from this July 5 order that the mother appeals offering some four assignments of reversible error, namely: (1) the evidence does not support the petition allegations; (2) the court unlawfully undertook to modify the child custody provisions of a divorce decree; (3) a dispositional hearing was neither set nor held immediately following the adjudicatory hearing as statutorily required; and (4) incompetent evidence was admitted and competent evidence was excluded at trial.

I

The mother's first complaint—that the state's allegations are without evidentiary foundation—while fuzzy is founded on two contentions: the state failed to prove either (1) that Stacy was "abandoned" by his mother, or (2) that he was a neglected child. Neither point has merit.

■ The short answer to the first suggestion is that the state did not allege nor did it attempt to prove that the mother abandoned the youngster. Nor was it necessary because abandonment of a child is merely one of the ways he can become "deprived" as that term is defined in 10 O.S. 1977 (Supp.) § 1101(d).[2] The allegation was, as we said, that Stacy was deprived because he had suffered physical abuse and otherwise was not receiving proper parental care.

The mother's second point dealing with the subject of neglect may be paraphrased this way: if the term "deprived" can be equated with the word "neglected," then the proof failed because neglect involves a disregard of parental duty due to indifference or willfulness, which, she claims, was not shown in this case.

■ Again this argument ignores the broad reaches of the existing statute. Recent legislation regarding children reflects the growing trend of community thinking away from considering parental rights as sacredly paramount to those of a

---

1. The mother and her boyfriend had lived together for several months and did not get married until after this action was commenced.

2. Section 1101(d) reads in relevant part:
   "The term 'deprived child' means a child who is for any reason destitute, homeless or abandoned; or who has not the proper parental care or guardianship; or whose home, by reason of neglect, cruelty, or depravity on the part of his parents, guardian or other person in whose care it may be, is an unfit place for such child; or who is in need of special care and treatment because of his physical or mental condition, and his ... legal custodian is unable or willfully fails to provide it .... Where used in this chapter, the phrase 'dependent and neglected' shall be deemed to mean deprived.'" (emphasis ours)

helpless child. While parental rights are important and entitled to protection, they must be balanced against those of a child, and, where they are found to conflict the child's should be protected. Parents have both legal rights and obligations, while children, of course, have, for the most part, only rights. Such rights and/or duties have not been clearly defined by law or custom. By implication, however, the provisions of the "Delinquent, Dependent and Neglected Children" Act[3] attempt to establish the parameters of rights enforceable by children and of the correlative obligations imposed on parents. The first few years of a child's life are extremely important. He has a right to be cared for properly and the parents have an obligation to honor that right. And, if the parent cannot or will not do so, then she will not be heard to complain if the state undertakes to otherwise protect the right.

In this case it is not merely a matter of Stacy being neglected in a general sense—although as we shall see there was ample evidence of "neglect" even as the mother wants it defined, i. e., she was often 'indifferent" to the needs of the boy—there was also evidence that she, in effect, authorized physical abuse of the little fellow by turning over his discipline to the live-in boyfriend.

The evidence established that the mother divorced Stacy's father when the child was a year old. After that she left Stacy with first one relative then another while she moved from place to place, including Houston, Texas, where she experienced a one month marriage. Several months before this action was filed, the boyfriend, whom she met at work, started sleeping in her bed with her while Stacy occupied a cot nearby.

One day it was reported to authorities that Stacy appeared to have been abused. As we mentioned earlier, an investigation ensued and the boy was found to be badly bruised. Both the mother and the boyfriend admitted the bruises resulted from the latter hitting the child. The man said these were only spot bruises which were caused by a ring he wore while punishing the child. Other evidence, however, indicated that there were also long streaking bruises about the boy's body, a significant bruise on his left leg and knots on his head one of which had an open gash.

This plus other evidence of the mother's irresponsibility and indifference to the child's daily needs was sufficient to support both the allegations of the petition and the order of the court.

## II

The mother's next complaint is premised on what she conceives to be the trial court's misconstruction of 10 O.S. 1971 § 1102—a statute granting jurisdiction over a deprived child and his parents when a petition for an adjudication is filed—in that it does not give the court "authority to proceed as in a motion to modify a divorce decree." And she says the court did indeed treat the petition as a motion to modify because: (1) the state argued at the close of its case that it had shown a change of condition—an essential prerequisite to modifying the child custody provisions of a divorce decree; (2) no dispositional hearing was set at the adjudicatory hearing; and (3) the case was set for "review" six months later—a circumstance suggesting the court considered the custodial change to be permanent.

This contention borders on being frivolous. The court did not hear or pass on a motion to modify a divorce decree. The state petitioned for an adjudication declaring the youngster deprived and making him a ward of the court. The trial judge held a hearing on the petition and found the child was deprived. Evidence was also heard that the child's father—police chief of Jones, Oklahoma—had remarried and established a stable home environment in a "good neighborhood." His wife—with whom the mother had left Stacy in the

---

**3.** Although there have been a number of modifications through the years of 10 O.S. 1971 §§ 1101 et seq., we have considered and applied only those statutes in effect at the times complained of by the state.

past—said she loved the boy and was happy to help care for him. The court consequently placed the ward in the care of the father. Jurisdiction to do so is granted in 10 O.S. 1971 §§ 1102 and 1114. It is immaterial that it had the effect of modifying an existing divorce decree order.

## III

■ The next fault found with the proceedings by the mother is that the trial judge failed to set and hold a dispositional hearing which she says is required by 10 O.S. 1971 § 1115.

If she means that the dispositional hearing had to be set immediately after the adjudication she is wrong. The statute makes no such requirement. All it requires is that a dispositional hearing be held after the adjudication order is entered. It does not say when the hearing shall be held and, when one is held, it may be adjourned for "a reasonable period." Certainly the statute does not contemplate an immediate hearing since it authorizes the introduction of "oral and written reports" and all other evidence "helpful in determining the proper disposition best serving the interest of the child and the public"—evidence which could require considerable time to garner.

■ Here, temporary provisions were made for the care of Stacy during a six month period. In the meantime, the mother and her husband were to continue receiving parental counseling and the child was to be psychologically evaluated and given counseling if necessary.

This procedure, under the circumstances of this case, violates neither the letter nor spirit of the controlling law.

## IV

■ Finally, the mother says the court reversibly erred in allowing Stacy's paternal grandmother to testify concerning her (the mother) misconduct two and three years earlier. The mother claims this conduct is too remote to be helpful because other evidence indicated that she had attended counseling sessions shortly after the investigation in question began and that both she and her new husband "had drastically changed their discipline techniques."

We disagree. The evidence was relevant background information concerning the mother's past propensities, her care and handling of and attitude toward the child.

The order appealed is affirmed.

BACON, J., concurs.