858 P.2d 1296 (1993)
In the Matter of K.L.H. and D.C.H., Alleged Deprived Children.
Rondha Marie FRANKLIN and Scott Patrick Lee Harris, Appellants,
v.
The STATE of Oklahoma, Appellee.
No. 80917.
Court of Appeals of Oklahoma, Division No. 1.
July 20, 1993.
James L. Percival, Oklahoma City, for appellants.
Robert H. Macy, James B. Robertson, Oklahoma City, for appellee.
Released for Publication by Order of the Court of Appeals of Oklahoma, Division No. 1.

*1297 MEMORANDUM OPINION
HANSEN, Chief Judge:
Appellants (Parents) seek review of the trail court's judgment, rendered on jury verdicts, finding the child D.C.H. was deprived as to Parents, and terminating Parents' rights as to both children. We affirm.
This action was initiated in November 1990, with Appellee's (State) filing of a petition alleging the child K.L.H. was deprived. The petition further alleged K.L.H. had been physically abused while in the custody of Parents, having suffered bruising to the face, collar bone and back, and that Parents' explanation of the bruising was inconsistent with medical findings. The petition asked that K.L.H. be made a ward of the court and be placed in foster care.
Parents, with representation of counsel, stipulated to the petition. K.L.H. was adjudicated deprived and was made a ward of the court. At a disposition hearing in January 1991, the trial court adopted a "service plan" outlining seven goals Parents had to accomplish to have K.L.H. returned to their custody.[1]
At a review hearing in August 1991, the court determined Parents had made progress with the service plan and placed physical custody with Parents, while legal custody remained with State. Parents returned K.L.H. to State's physical custody because State would not allow Appellant Franklin to take K.L.H. with her to join Appellant Harris in Arkansas, where he had moved.
In December 1991, after Parents' return to Oklahoma, the court returned physical custody to Parents. Also in December 1991, Appellant Franklin gave birth to the child D.C.H. The children remained in Parents' physical custody until March 1992. At that time State received a referral reporting D.C.H. had bruising on her face.
At a show cause hearing, the court found Parents' explanation for the bruising inconsistent with the medical evidence. Both children were recommitted to the custody *1298 of State for placement due to new allegations of abuse.
State then filed an amended petition asking the court to terminate Parents' parental rights. This petition alleged, among other things, abuse to D.C.H. while in the care and custody of Parents, after prior abuse to K.L.H., and that Parents had failed to correct the conditions which led to K.L.H. being adjudicated deprived.
After several continuances at the request of Parents, the matter was tried to a jury in December 1992. The jury verdicts found D.C.H. deprived as to both Parents and found Parents' parental rights should be terminated in regard to both K.L.H. and D.C.H. The trial court entered its judgment pursuant to the jury's verdicts and Parents appeal from that judgment.
Parents first allege the trial court erred in allowing evidence to be introduced relating to A.D.M.F., an older sibling of the children involved here. Parents entered a continuing objection to any evidence relating to A.D.M.F. at the time the child was mentioned in State's opening statement.
Appellant Franklin testified A.D.M.F. is her child from her marriage to Bryan Scales. Franklin further testified A.D.M.F. became the subject of deprived child proceedings in Colorado after an investigation of facial bruising. At the time Franklin was living with Appellant Harris and A.D.M.F. was six months old.
Franklin stipulated to portions of the Colorado petition, including a statement that conditions in the home were injurious to the child, and then voluntarily relinquished her parental rights. The petition, with certain portions redacted, and a document entitled Advisement and Admission in Dependency and Neglect, which contained Franklin's stipulation, were admitted into evidence over her objection.
Parents argue the evidence as to A.D.M.F. should have been excluded because State did not plead any facts regarding the child in its petition. Parents rely on 10 O.S.Supp. 1990 § 1103, which requires a petition in a juvenile proceeding to be verified and, inter alia, to set forth "with particularity facts which bring the child within the purview of" the juvenile code.
We find the facts set forth in the amended petition sufficient to advice Parents as to the nature of the proceedings and what action State was seeking. See, Matter of A.D.B., 818 P.2d 483 (Okla. 1991). Parents provide no legal authority that State was required to plead all facts upon which it would rely at trial.
Parents object to the introduction of "from court records from Colorado". Parents concede the documents were self-authenticating, but assert the documents do not prove their own relevance. Parents do not otherwise identify which documents they find objectionable, nor specifically what in the documents is prejudicial.
Presuming Parents refer to the Colorado petition and Franklin's stipulation, we find them relevant and sufficiently explained by Franklin in her testimony. We find no contention by State in the record the Colorado documents were offered to prove Parents inflicted the injuries to A.D.M.F. Parents had full opportunity to explain the circumstances of the Colorado case.
The evidence relating to A.D.M.F. provided relevant background information on Parents' past propensities, care, handling of and attitude toward their children. Matter of Stacy W., 623 P.2d 1057 (Okla. App. 1980). Evidence that Franklin had previously stipulated to allowing injurious conditions to exist, when considered with Parents' second similar stipulation, certainly go to Parents' ability to provide proper parental care or a fit home. See, 10 O.S.Supp. 1990 § 1101(4)(b). We find no error in the trial court's admission of the evidence relating to A.D.M.F.
Parents' second contention is that there was no competent evidence that termination *1299 of Parents' rights was in the best interest of the children. Parents note State's amended petition does not expressly state the statutory authority under which State relies in requesting termination. Parents assume, as we do, that State bases its petition on 10 O.S.Supp. 1987 §§ 1130(A)(3) and (5). Respectively, those subsections authorize termination of parental rights for failure to correct the conditions upon which a finding of a deprived child is made, and for physical or sexual abuse, or failing to protect a child from physical or sexual abuse.
Section 1130(A)(3)(c) requires a finding that termination of parental rights is in the best interests of the child. Parents specifically contend, again without citation of legal authority, that this element must be supported by evidence from an expert qualified to form a clinical opinion. Parents argue the only evidence State introduced on this element was the lay testimony of social workers, and that this was an attempt to invade the province of the jury.
We find Parents' argument unpersuasive. The jury heard extensive testimony and received considerable other evidence which would have allowed them to make an informed determination on the question of whether termination was in the best interest of the children. The one social worker witness who was allowed to express his opinion on this question went to some lengths to explain why he thought the children should not be returned to Parents' custody.
We find no requirement for expert testimony to prove the best interests of the children and see little danger under the circumstances that the jury was left to make their determination solely from the opinion of the social worker.
As their final proposition, Parents contend insufficient evidence was introduced at trial to predicate a termination of parental rights by clear and convincing evidence under either 10 O.S.Supp. 1987 §§ 1130(A)(3) or (5).
Parents rely on the wrong standard of review. In a termination proceeding tried to a jury, the verdict of the jury is conclusive as to all disputed facts, and where there is any competent evidence reasonably tending to support the verdict, we will not disturb the judgment based on that verdict. Matter of T.R.W., 722 P.2d 1197 (Okla. 1985).
As to § 1130(A)(3), Parents argue they were in substantial compliance, or were "actively involved in making efforts to be in substantial compliance" with the terms of the service plan until the petition was amended. The purpose of the service plan was to correct the conditions leading to the children being found to be deprived.
State concedes Parents complied with portions of the service plan, but in two years had failed to complete the parenting skills class, which was the first provision of the plan. Parents concede they fell one class short of completing the second portion of this program. The record also reflects Parents moved residences eight times, and that Appellant Harris had no fewer than seven jobs after adoption of the service plan. This evidence could support a finding by the jury that Parents had failed to maintain a safe, stable home and actively seek and maintain legal employment, two other requirements of the plan.
Parents' argument as to the alleged inadequacy of a § 1130(A)(5) finding is that "physical abuse which is sufficient to constitute the termination of parental rights must be something more than mere bruising." Parents assert there is no evidence of injuries to either child more serious than bruising.
We find Parents' final contention not only totally unsupported by legal authority, but troubling. We believe the intent of § 1130(A)(5)(b) is to protect deprived children from serious injury or death by removing them from the custody of parents where there is a proven pattern of abuse. Such a pattern of abuse is supported here *1300 by competent evidence of record. The statute neither sets forth nor requires any degree of harm or injury where there is a finding of subsequent abuse.
Finding no legal error, and competent evidence of record to support the jury's verdict and the trial court's judgment thereon, the judgment is AFFIRMED.
JONES, P.J., and ADAMS, J., concur.
NOTES
[1] The parties agree one of the seven, a requirement for psychological evaluation, was stricken because of cost.