**In the Matter of P.E.K., an alleged deprived child.**

**P.E.K., Appellant,**

v.

**K.V.K., S.S.K., and State of Oklahoma, ex rel. Oklahoma Department of Human Services, Appellees.**

**No. 82034.**

Court of Appeals of Oklahoma, Division No. 2.

April 12, 1994.

As Corrected April 18, 1994.

Robert A. McMahan, Altus, for appellant.

Thomas W. Talley, Anthony G. Mitchell, Talley & Talley, Hobart, Mathew Salter, Asst. Dist. Atty., Hobart, for appellees.

REIF, Chief Judge.

■ Twelve-year-old P.E.K., through his guardian ad litem, appeals an order entered June 28, 1993, terminating the parental rights of his adoptive parents.[1] The termination was ordered at a dispositional hearing that *immediately* followed the adjudicatory hearing and the trial court's finding that P.E.K. was deprived under 10 O.S.1991 § 1101(4)(c). This section defines a child to be deprived when the child needs special care and treatment because of his physical or mental condition and his parents are unable to provide such special care and treatment.

In the petition seeking the deprived adjudication, the State alleged that P.E.K. was "abusive and violent toward his brother and his parents; uncontrollable and poses a significant threat to the physical and mental well-being of his brother and parents." In their written voluntary relinquishment of parental rights, the parents stated that P.E.K. "needs a more structured environment and psychological care and treatment than they can provide and ... their relinquishment of parental rights will serve the best interest of the child."

■ P.E.K. acknowledged his severe behavioral problems over the past four years and the numerous, unsuccessful efforts by his adoptive parents to help him adjust. Counsel for P.E.K. stipulated that P.E.K. was deprived under section 1101(4)(c) and agreed to P.E.K.'s placement with the Department of Human Services. However, he objected to the immediate termination of the adoptive parents' parental rights. For the reasons that follow, we agree with P.E.K. that it was error to proceed instanter to hear and decide the termination issue.

By statute, a court is empowered to terminate parental rights at the request of the parents, if it is in the best interests of the child to do so. 10 O.S.1991 § 1130(A)(1) and (D). However, termination of parental rights *as a dispositional alternative following an adjudication that a child is deprived* must be pursued in a manner consistent with other statutory policies and directives.[2] Whenever a child is adjudicated to be a ward of the court and placed in the custody of the Department of Human Services, the Legislature has declared its intent that the preferred placement of the child is in his home, and that any placement should be made to "preserve and strengthen the family ties of the child whenever possible." 10 O.S.1991 § 1135(A). To carry out this intent, the Legislature has placed a general mandatory duty upon the Department of Human Services to "review and assess each child committed to it to determine the type of placement consistent with the treatment needs of the child [including] an investigation of the personal and family history of the child, and his environment, and any physical or mental examinations considered necessary." 10 O.S.1991 § 1135(B).

To ensure an appropriate disposition of a child adjudicated a ward of the court and to

---

1. An order directing the termination of parental rights is a final appealable order. 10 O.S.1991 § 1130(C). A child is a party to a proceeding to sever the child's relationship to his or her parents. *In re M.S.M.,* 781 P.2d 332, 334 (Okla. 1989).

2. Title 10 O.S.1991 § 1130(D) does authorize termination of parental rights upon petition of

the parents without a predicate finding that the child is delinquent, deprived, or in need of supervision; however, in cases where there is such a predicate adjudication, termination as a dispositional alternative must follow statutory procedure governing post-adjudication disposition of the child.

achieve its general intent, the Legislature has specifically prescribed that "[a]n individual treatment and service plan shall be filed with the court within thirty (30) days after any child has been [so] adjudicated ... by the legal custodian if the child has been removed from the custody of its lawful parent or parents." 10 O.S.1991 § 1115.1(A). The treatment and service plan shall include, *inter alia*, "[a] history of the child and family, including identification of the problems leading to the adjudication [and for a deprived child] a statement of the methods to be used to correct those conditions or to achieve permanent placement of the child." 10 O.S.1991 § 1115.1(A)(1). Whenever a child is placed outside his home, the service plan must state, "[t]he services necessary to assist the child to reintegrate with his family." 10 O.S.1991 § 1115.1(A)(3)(c).

Additionally, in any dispositional order removing a child from the home of the child, "the court shall make a determination that ... reasonable efforts have been made to provide for the return of the child to the child's own home, or that efforts to reunite the family are not feasible." 10 O.S.1991 § 1116(A)(9). Moreover, dispositional orders must be reviewed every six months and, at some point, not to exceed eighteen months, the court must conduct a dispositional hearing to consider whether the child should be returned to his parents. 10 O.S.1991 § 1116.1(A)(1) and (2). The orders upon review are required to include such specific determinations as "whether or not reasonable efforts have been made to provide for the return of the child to the child's own home, [or if] reasonable efforts ... to reunite the family have failed, or are not feasible." 10 O.S.1991 § 1116.1(C)(1).

In the instant case, the record is clear, and largely undisputed, that the adoptive parents of P.E.K. pursued every reasonable alternative available to them to help P.E.K. with his "abusive," "violent," and "uncontrollable" behavior and that he needed a "structured environment and psychological care and treatment [beyond what] they can provide." The adoptive parents were literally "at the end of their rope" to help P.E.K., and this legal proceeding was necessary in the child's best interests.

However, the issue is *not* whether the adoptive parents exhausted all the reasonable resources available to them prior to coming to court. The issue is whether all the legal requirements were met and all the reasonable avenues were pursued *after* adjudication to "preserve and strengthen the family ties" of P.E.K. and to assess his needs, with reunification of the family as its goal. Just as the record clearly reflects admirable efforts on the part of the adoptive parents to help P.E.K., it equally clearly reflects that after adjudication and prior to the disposition of termination, P.E.K.'s treatment needs were *not* reviewed and assessed by the Department of Human Services, and *no* individual treatment and service plan was filed with the court. Additionally, that portion of the judgment granting termination of parental rights as a disposition contained *no* express determination concerning the feasibility of reuniting P.E.K. with his family.

Significantly, the record reflects that there were certain programs and services that could possibly help P.E.K. correct the conditions and problems that led to his deprived adjudication and assist his reintegration with his family. Both the child guidance expert and DHS social worker called by the adoptive parents to support their request to terminate parental rights acknowledged that "community homes" were available. Another noteworthy point in the child guidance expert's testimony was that some of the programs P.E.K. had been through were not implemented long enough to achieve very good results. He further acknowledged that it would be a good idea for P.E.K. to be reevaluated. The DHS social worker also indicated that in-patient treatment might also help, but frankly admitted she had dealt with P.E.K. for only a week and a half and concluded her testimony about the programs that might help P.E.K. by saying, "I don't know at this point."

Under the record presented, we hold that terminating the parental rights of the adoptive parents was not a proper dispositional alternative prior to the statutory assessment of P.E.K. by the Department of Human Ser-

vices and the presentment of a service plan to the court, particularly in view of available, untried programs, such as a "community home." The order terminating the parental rights of P.E.K.'s adoptive parents is reversed and this cause is remanded with directions for the trial court to obtain an assessment of P.E.K. and a service plan from the Department of Human Services.

**REVERSED AND REMANDED WITH DIRECTIONS.**

BOUDREAU, P.J., concurs.

RAPP, J., dissents.

RAPP, Judge, dissenting.

I dissent. The evidence here is conclusive that the child's best interest will be served by termination. Our natural inclination as a court is to seek refuge in procedural niceties and to assert that failure to follow established procedure will evolve into a precedent that will erode the strict legislative law. However, there are, as always, matters which may be handled in equitable proceedings without the law. I am confident that our system is sufficient to allow deviations of this nature where common sense and the evidence dictate affirmance as being in the child's best interest.