2010 OK CIV APP 102

**In the Matter of J.D.D. & J.R.F., Alleged Deprived Children.**

**J.D.D. & J.R.F., Appellants,**

v.

**State of Oklahoma, Appellee.**

No. 108,031.

Court of Civil Appeals of Oklahoma, Division No. 3.

Sept. 3, 2010.

S. Brent Bahner, Ardmore, OK, for Appellants.

Heather J. Russell Cooper, Kimberly S.T. Reding, Assistant District Attorneys, Ardmore, OK, for Appellee.

ROBERT DICK BELL, Vice–Chief Judge.

¶1 This appeal is from a judgment terminating the parental rights of Victoria Fundora (Mother) to her minor children, J.D.D. and J.R.F. The parental rights of the natural fathers were also terminated. Mother and the fathers do not appeal. The minor children appeal claiming the trial court's termination order is not supported by clear and convincing evidence. Children also contend the trial court denied them effective assistance of counsel when it restricted their counsel's participation in the trial. For the reasons discussed hereinafter, we affirm the trial court's order terminating Mother's parental rights, and remand with instructions to correct certain deficiencies in the order.

¶2 J.D.D. was born on June 9, 2006. J.D.D. was placed with Mother, who was also a deprived child, in voluntary foster care placements designed to assist young mothers in developing skills necessary to care for a child. State filed a petition seeking the adjudication of J.D.D. as deprived on September 26, 2007, when Mother was expelled from her placement for failing to meet minimum standards. State's petition alleged J.D.D. did not have proper parental care or guardianship due to Mother's status as a deprived child, homelessness and lack of maturity.

¶3 Prior to the adjudication hearing, the court appointed an attorney for the child. Mother was also represented by counsel. After a non-jury trial, the court adjudicated J.D.D. as deprived and entered a disposition order. Therein, Mother was ordered to (a) provide a safe, stable, and hygienic home with furniture and appliances suitable to meet the basic needs of the child; (b) demonstrate the ability to provide a stable family environment that combines the appropriate support, nutrition, education, protection and nurturing; (c) complete a parenting skills training course approved by the Department of Human Services (DHS) and demonstrate that she can put such learned skills into practice; (d) maintain employment sufficient to meet her needs and the needs of the child;

and (e) obtain her high school diploma or its equivalent. In December 2008, State filed an application to terminate Mother's parental rights to J.D.D. State dismissed the application in January 2009, to allow Mother additional time to make substantial progress in correcting the conditions which led to J.D.D.'s adjudication as deprived.

¶4 On June 16, 2009, Mother gave birth to J.R.F. The father of the child was previously arrested in December 2008 during a drug bust for trafficking in narcotics and faced numerous drug charges. Mother was present at the drug bust. DHS was granted emergency custody of J.R.F. at birth due to Mother's failure to correct conditions which caused J.D.D.'s deprived adjudication. J.R.F. was adjudicated deprived July 2009. On August 13, 2009, the court ordered Mother to comply with the standards of conduct set forth by the court in its previous order, to pay child support and complete a DHS approved counseling course designed to teach her the impact of violence on children and how to eliminate violence from relationships. Mother was also ordered to demonstrate that she can practice what she learned.

¶5 On November 20, 2009, State filed applications to terminate Mother's parental rights (and the rights of the two fathers) to both children pursuant to 10A O.S. Supp.2009 § 1–4–904(B)(5). At a pretrial in-camera hearing, the trial court informed the parties of the Children's attorney role at trial. The court stated:

> [B]ased on the statute, the lawyer for the child cannot express his or her own personal opinion or even professional opinion as to what's in the best interest of his or her client. That is no longer the role of the lawyer ... In termination of parental rights where the child has not directed his or her lawyer to advocate a position, I will not allow the attorney for the child to participate in the jury selection nor to participate in argument to the jury ...
>
> Questioning of witnesses will be limited to ... being neutral and supplementing the questions of counsel for the State and counsel for the parent after both ... have examined and cross-examined.

The court explained the limited role of Children's attorney to the jury. Notwithstanding the trial court's directive and the fact that Children were not of a sufficient age to direct their attorney to advocate a position, Children's attorney submitted proposed jury instructions, participated in sidebars, objected to State's opening statement and advocated against terminating Mother's parental rights.

¶ 6 At jury trial, State presented the testimony of two child welfare permanency planners and that of a court appointed special advocate (CASA). Mother also testified. Leslie Parson, the current child welfare permanency planner, testified Mother failed to provide a safe and stable home for the children. Mother's home lacked electricity and food and she failed to maintain employment. Ms. Parson discussed the services offered to Mother for transportation to visitation and meetings. Notwithstanding such offers, Mother did not complete the counseling and parenting classes. Ms. Parson opined the Children required financial, physical and emotional support which Mother is not capable of providing. Ms. Parson stated the Children are healthy and developmentally on target in their current placement. She opined termination of Mother's parental rights is in the best interest of Children because the Children need permanency.

¶ 7 Kisha Burkhalter, a child welfare specialist and the previous permanency planner, testified that despite her best efforts in providing resources and in counseling, talking, advising and cajoling Mother, she could not get Mother to comply with the court order. Ms. Burkhalter stated when she was last assigned to the case, her recommendation was termination of Mother's parental rights because such termination would be in the Children's best interests. Dianne Shepard, the CASA volunteer, testified that based on her knowledge of the case, training and experience, termination of Mother's parental rights would be in the Children's best interest.

■ ¶ 8 At the conclusion of trial, the jury unanimously found, by clear and convincing evidence, that Mother failed to correct the deficient conditions notwithstanding that she was given more than three months to correct said conditions. The jury also found, by clear and convincing evidence, that termination of Mother's parental rights is in Children's best interests. The trial court entered its order terminating Mother's parental rights. Children now appeal.[1]

■ ¶ 9 On appeal, Children claim their attorney was erroneously prevented from participating in jury selection, opening and closing statements, from presenting his own witnesses and from moving for dismissal, directed verdict and judgment notwithstanding the verdict. Children argue this limitation and the court's comments to the jury prior to and at the conclusion of jury selection rendered their counsel ineffective. State counters the trial court's actions were authorized by statute and none of the restrictions placed on Mr. Bahner inhibited his ability to protect Children's interests. State further contends the trial court properly limited Mr. Bahner's participation because his objective, at trial, was to advocate on behalf of Mother notwithstanding that she was represented by her own counsel.

■ ¶ 10 In parental rights termination cases, the children are statutorily entitled to be represented by independent counsel. However, such independent counsel's participation in the proceeding is not unlimited. Title 10A O.S. Supp.2009 § 1–4–306(A)(2)(c) defines the role of such independent counsel as follows:

> The attorney shall represent the child and any expressed interests of the child. The attorney shall make such further inquiry as the attorney deems necessary to ascertain the facts, to interview witnesses, examine and cross-examine witnesses, make recommendations to the court and participate further in the proceedings to the degree appropriate for adequately representing the interests of the child.

¶ 11 *Cooper v. State*, 1996 OK CR 38, 922 P.2d 1217, considered similar language in 21

---

1. A child is a party to a proceeding to sever the child's relationship to his or her parents. *Matter of P.E.K.*, 1994 OK CIV APP 56, ¶ 1, 875 P.2d 451, 452 n. 1.

O.S. Supp.1992 § 846(G)(1).[2] This statute was renumbered, as modified, in the Children's Code, at 10 O.S. §§ 7102 to 7105 by *Laws* 1995, c. 353, § 20, *eff.* Nov. 1, 1995. Thereafter, §§ 7102 to 7105 were repealed by *Laws* 2009, c. 233, § 195, *emerg. eff.* May 21, 2009. However, the relevant language at issue was added to the Children's Code by *Laws* 1998, c. 421, § 12, *emerg. eff.* June 11, 1998, at 10 O.S. § 7003–3.7(A)(2)(c). Section 7003–3.7 was renumbered and amended as 10A O.S. Supp.2009 § 1–4–306, by *Laws* 2009, c. 233, §§ 26, 234, *emerg. eff.* May 21, 2009.

¶ 12 In *Cooper*, the child's counsel participated in *voir dire* of the jury and all pretrial hearings and motions. Said counsel interposed objections, examined witnesses, bolstered the alleged victim's credibility, rehabilitated witnesses after impeachment, corroborated the child's story and impeached the defendant. On the defendant's appeal to the Oklahoma Court of Criminal Appeals, the Court held the defendant was denied a fair trial because the child's appointed counsel exceeded her statutory authority to investigate, examine, cross-examine and make recommendations to court for the child's best interests by participating in the prosecution to defendant's detriment. The court interpreted the pertinent language in § 846(G)(1) to mean the child's advocate may only participate in the criminal trial when such participation promotes the child's best interests. *Cooper* explained:

> To comply with due process, the child advocate may not, however, take on an adversarial role against the accused despite the fact that convicting the accused may be in the child's best interests. Even though section 846(G)(1) allows the child advocate to examine and cross-examine the witnesses at the criminal trial of the accused and otherwise participate in the proceedings, we believe it will be in the minority of cases, rather than the majority, that the child advocate will readily participate. It

is difficult to conceive of many instances when the child advocate can participate in the examination of the witnesses and other parts of the trial without becoming a second advocate against the accused.

*Id.* at ¶ 6, 922 P.2d at 1218.

¶ 13 Although *Cooper* dealt with a child's advocate who sided with the district attorney, and the instant termination case involves an advocate for the Children who decidedly sided with the parent, the analysis in *Cooper* is still applicable. The pertinent language at issue in *Cooper* is the language at issue in this case. Consequently, we hold the trial court did not err by limiting Mr. Bahner's participation in the proceeding to the degree authorized by § 1–4–306(A)(2)(c). Had Mr. Bahner been permitted to proceed as he desired, he would certainly have exceeded his statutory authority. We further reject Children's attempt to challenge the adequacy of Mother's defense. Mother's attorney was actively involved in this case and fully participated in the trial. Furthermore, Mother does not appeal the termination of her parental rights.

¶ 14 Children next argue insufficient evidence supports the trial court's order terminating Mother's parental rights and therefore, the court erred in overruling Mother's demurrer to the evidence. In a parental rights termination proceeding, the court shall not terminate the rights of a parent unless one or more of the statutory grounds for termination of parental rights at 10A O.S. Supp.2009 § 1–4–904 has been proven by "clear and convincing" evidence. *In re M.C.M.*, 2008 OK CIV APP 29, ¶ 11, 180 P.3d 688, 690. On appeal, we review to determine whether the trial court's judgment is supported by the requisite clear and convincing evidence. *In the Matter of S.B.C.*, 2002 OK 83, 64 P.3d 1080.

¶ 15 After reviewing the record, we find clear and convincing evidence supports the jury's factual determination that Mother

---

2. Section 846(G)(1) mandated the appointment of an attorney to appear for and represent a child who is the alleged subject of child abuse. This section charged the attorney to represent the child's best interests and to "make such further investigation as the attorney deems necessary to ascertain the facts, to interview witnesses, examine and cross-examine witnesses at the preliminary hearing and trial, make recommendations to the court and participate further in the proceedings to the degree appropriate for adequately representing the child."

failed to correct the conditions that lead to the deprived children adjudication. Although Mother obtained her GED and lived in a rent-free apartment, she did not maintain a working refrigerator or have electricity during the winter months. Mother worked at many part-time jobs, some of which she quit and others from which she was fired for stealing, but she did not maintain consistent employment. Mother admitted she had not paid child support. Mother also admitted she never attended counseling or completed the parenting course. Mother testified she lived with and conceived a child with someone she knew to be a drug dealer and who physically assaulted her, she was present at a drug bust, she failed to comply with requirements necessary to ensure her state food stamp benefits would continue, she allowed a runaway to stay in her home, she was arrested for shoplifting, she allowed people to use drugs in her home and she participated in at least three street fights, one while eight months pregnant. This was clear and convincing evidence that Mother chose to disregard and failed to correct the condition that she provide Children with a stable family environment and a suitable home.

¶ 16 We further find the clear and convincing evidence supports the jury's determination that termination of Mother's parental rights is in the best interests of the Children. *See* § 1–4–904(A)(2). The DHS permanency planners testified that termination of Mother's parental rights would be in the Children's best interests because the Children are developing properly, they have bonded with their foster family and they deserve permanency. We recognize Children's claim that State's witnesses lacked the specific education, training, and knowledge to render an opinion regarding the Children's best interests. However, in an Oklahoma parental rights termination proceeding, there is no requirement for expert witness testimony to prove the best interests of the children. *In the Mater of K.L.H.,* 1993 OK CIV APP 127, ¶ 20, 858 P.2d 1296, 1299. Consequently, we reject Children's assertion that expert witness testimony, alone, qualifies as evidence of the Children's best interests.

¶ 17 We conclude State's evidence, coupled with Mother's own admissions, provided *clear* and convincing evidence in support of the jury's conclusion that Mother's parental rights should be terminated under § 1–4–904(B)(5) and that it was in Children's best interests to terminate Mother's parental rights. The trial court's order terminating Mother's parental rights is affirmed.

¶ 18 Notwithstanding that we affirm the order terminating Mother's parental rights to the Children, we find the trial court's order is flawed. Although the order references the Children's dates of birth, it fails to actually recite the Children's dates of birth. The order also fails to contain certain findings required by 10A O.S. Supp.2009 § 1–4–906(B)(2). This section provides an order terminating parental rights shall indicate the duty of the parent to support his or her minor child will not be terminated unless the child is subsequently adopted as provided by § 1–4–906(B)(3). Accordingly, we remand the case with instructions to the trial court to take such actions as are necessary to correct these deficiencies in the final order. The court's judgment is otherwise affirmed in all respects.

¶ 19 AFFIRMED AND REMANDED.

JOPLIN, P.J., and MITCHELL, J., concur.