2005 OK 8

**B-STAR, INC., an Oklahoma corporation, Appellee,**

v.

**POLYONE CORPORATION, formerly M.A. Hanna Company, a Delaware corporation, Appellant.**

No. 97,148.

Supreme Court of Oklahoma.

Feb. 15, 2005.

As Corrected Feb. 18, 2005.

Motion to Dismiss Denied
June 13, 2005.

Rehearing Denied June 28, 2005.

Terry P. Malloy, Tulsa, OK, for the Appellant.

Anthony M. Laizure, Tommy W. Humphries, Tulsa, OK, for the Appellee.

TAYLOR, J.

## I. ISSUES

¶ 1 The issues preserved for our review are: (1) whether the jury's damage award

was excessive and included damages not authorized by law, (2) whether the jury verdict was supported by the weight of the evidence or was contrary to law, (3) whether the trial judge improperly excluded testimony offered by the appellant at trial, and (4) whether the appellant preserved for appellate review its objection to the jury instructions, and, if not, whether the jury instructions contained any fundamental error. We find no error in the trial court proceedings.

## II. FACTS

¶2 In 1990, B–Star, Inc. (B–Star) began producing rubber molded products for clients including O.Z. Gedney (Gedney). B–Star bought its rubber compound from Colonial Rubber Works, later M.A. Hanna Company and now Polyone Corporation, (Hanna). In early 1995, B–Star approached Gedney in hopes of getting Gedney's business for fire stop products. The fire stop products are passive and are used to prevent the spread of fire and gases in military vessels and in buildings.

¶3 In April of 1995, representatives of B–Star and Gedney met with representatives of Hanna to discuss production of the fire stop products. B–Star wanted Hanna to supply a rubber compound to B–Star. Then B–Star would manufacture the fire stop products using the rubber compound by a never before used transfer molding process. Gedney would market the fire stop products.

¶4 B–Star submitted a proposal to Gedney for manufacturing the fire stop products. By letter, Gedney congratulated B–Star on its successful bid and expressed its intent to develop a long-term relationship with B–Star. B–Star did not have a written contract with Gedney to supply the fire stop products for a given time period.

¶5 Hanna agreed to use and to not deviate from Gedney's proprietary formula for the rubber compound without Gedney's written permission. An employee of Hanna testified that Hanna signed a confidentially agreement before receiving the formula and that

Hanna knew it could not change Gedney's formula without Gedney's written permission. A vice president of Hanna testified that Hanna had a responsibility to use Gedney's proprietary formula in accordance with Gedney's requirements. He also testified that both Gedney and B–Star were "entitled to rely on Hanna's representation that it would fulfill its responsibility with respect to the use of the formula."

¶6 B–Star built a new facility and bought four presses and two new pumping units, and Gedney bought the molds. When production began in March of 1996, there were no problems with the compound supplied by Hanna. The production for Gedney was so successful that B–Star doubled the volume and turned away other business. In May, an approved change was made to the formula to reduce a hardness problem which B–Star had been having with the compound. With increased production, Hanna also began experiencing problems with the compound. Both B–Star and Hanna continued experiencing problems through 1996 and into 1997. B–Star was having problems with the compound scorching and with its consistency. Hanna was having problems with the compound sticking to its mill. With Gedney's permission, Hanna made a minor change in the formula which corrected the consistency problems but not the scorching problems.[1]

¶7 A representative of Hanna testified that it told B–Star there would have to be changes in the formula or it would stop supplying the compound. Twice in January of 1997, Gedney rejected Hanna's request to make changes in the formula. In February, B–Star called and placed another order at which time Hanna instituted the formula changes. About a year later, B–Star discovered that Hanna had added two ingredients which were not in the original formula and which had not been approved by Gedney. The two ingredients were the ingredients which Gedney had rejected as an addition to the formula in January of 1997.

¶8 After B–Star learned that Hanna had added two unauthorized ingredients, B–Star

---

1. Hanna made a change in the type of Neoprene used in the compound. B–Star acknowledges

that this change did not require written approval.

ordered the compound without the two additional ingredients. The products manufactured using the compound without the two additional ingredients did not break or crack—problems B–Star had experienced with the compound containing the two unauthorized ingredients. B–Star thus concluded that the two unauthorized ingredients were the cause of the breaking and cracking problems.

¶ 9 B–Star also noticed a strong solvent smell in Hanna's compound. Testing showed that the compound contained tetrachloromethane, a banned and dangerous solvent. Tetrachloromethane was not in the original formula and not approved by Gedney. Hanna acknowledged that it had added ingredients without Gedney's approval.

¶ 10 In March of 1998, Gedney sent Hanna a letter complaining of the changes in the formula. The letter stated that it had returned products which failed to meet its standards. Many of the products were returned because of "the brittle nature of what should be otherwise flexible rubber components." B–Star stopped buying the compound from Hanna and began buying it from another supplier, an action which Gedney supported. The new supplier also experienced problems with the compound. In July of 1998, Gedney stopped buying the fire stop products from B–Star.

¶ 11 B–Star sued Hanna for business losses. Hanna defended that the invoices limited and controlled its liability and that the loss of future profits was too speculative to be awarded as damages. At trial, Brad Bunch of B–Star estimated its losses caused by Hanna's action at $402,524.49 as of April 24, 1998. B–Star's expert calculated the total damages from production and loss of future sales for five years after Gedney terminated its relationship with B–Star to be $1,222,591.00 and for ten years to be $1,806,766.00.

¶ 12 A jury awarded B–Star damages of $1,222,591.00. Hanna appealed.[2] The Court of Civil Appeals ordered a remittitur or, in lieu of remittitur, a new trial. This Court granted certiorari review.

### III. STANDARD OF REVIEW

¶ 13 Our review of an action at law is governed by the any-competent-evidence standard. *Grumman Credit Corp. v. Rivair Flying Service, Inc.*, 1992 OK 133, ¶ 10, 845 P.2d 182, 185. Under this standard, a judgment based on a jury verdict will be affirmed if there is any competent evidence supporting the verdict. *Id.* A general verdict, such as the verdict here, is conclusive as to every material fact necessary to support it. *Bane v. Anderson, Bryant, & Co.*, 1989 OK 140, ¶ 21, 786 P.2d 1230, 1235. This Court will not reverse the trial court's denial of a motion for a new trial absent an abuse of discretion. *Mooney v. Mooney*, 2003 OK 51, ¶ 50, 70 P.3d 872, 881. "A judgment will not be reversed based on a trial judge's ruling to admit or exclude evidence absent a clear abuse of discretion." *Myers v. Missouri Pacific R.R.*, 2002 OK 60, ¶ 36, 52 P.3d 1014, 1033.

### IV. RULE 1.11(b)

¶ 14 Rule 1.11(b) limits a brief in chief to thirty pages and requires the appellate court clerk to reject any brief exceeding this limit unless otherwise allowed by this Court. 12 O.S.2001, ch. 15, app., rule 1.11(b). At least ten days before the brief's due date, a party may file an application to exceed the thirty-page limit. *Id.* Hanna did not file such an application. Hanna presents arguments in its reply brief not presented in its brief in chief. We view the reply brief as an extension of its brief in chief and in violation of rule 1.11(b). Not until its reply brief does Hanna argue that the Uniform Commercial Code applies, that the award of attorney fees was improper,[3] and that particular instructions were improperly given. To the extent

---

2. Hanna had filed a counterclaim for unpaid invoices. The jury found in favor of B–Star on the counterclaim. There are no allegations of error regarding the counterclaim before this Court.

3. In the trial court, B–Star sought and was awarded attorney fees pursuant to title 12, section 936 of the Oklahoma Statutes. We have not ruled on the merits of this award because the issue was not properly preserved for review.

Hanna has not properly addressed these arguments in its brief in chief, they are not preserved for this Court's review. Thus, this opinion does not address the merits of these arguments.

## V. PROPOSITIONS PRESENTED FOR REVIEW

¶ 15 Hanna's first proposition is that the trial court erred in denying its motion for a new trial for the following reasons: (1) There was an error in the assessment in the amount of damages; (2) The verdict was not sustained by sufficient evidence or was contrary to law; (3) The damages were so excessive as to appear to have been given under the influence of passion or prejudice; and (4) An error of law occurred at trial to which Hanna objected. Hanna's second [4] and third [5] propositions merely reference its argument under the first proposition and, thus, will not receive separate treatment. Hanna's fourth proposition of error is that the trial court erred in excluding testimonial evidence which Hanna offered at trial. Hanna's fifth proposition is that the trial court erred in its instructions to the jury.

## VI. DAMAGES

■■■ ¶ 16 Hanna argues that the jury improperly awarded damages for (1) unpaid invoices, (2) prejudgment interest, and (3) loss of future profits. Hanna argues that these damages were either not authorized by law, were too speculative to be considered, or were for unpaid invoices. All of these damages were presented through Brad Bunch's testimony and through an exhibit which was admitted as part of video deposition of B-Star's expert. There was no timely objection by Hanna to any of this evidence prior to it

4. Hanna's second proposition is: "The jury erroneously considered and awarded damages for specific costs and or [sic] losses suffered or incurred by appellee, the recovery of which is not authorized by law, or which the undisputed evidence reveals was never expended by appellee, or was so speculative in nature, so as to so grossly overstate the damages sustained by appellee in a contract action".

5. Hanna's third proposition is: "The jury verdict is clearly erroneous, unsupported by and against the weight of the evidence or contrary to law".

being presented to the jury. On appeal, Hanna does not raise any objections to the admission of this evidence. Thus, we cannot say that the jury improperly considered these damages. *Weathers v. Fulgenzi*, 1994 OK 119, ¶ 23, 884 P.2d 538, 543; *Bauman v. International Harvester Co.*, 1942 OK 358, ¶¶ 0, 3, 130 P.2d 287, 288.

## VII. VIDEO DEPOSITIONS

■■■ ¶ 17 A video deposition containing an exhibit relating to B-Star's damages presented as part of the evidence in this case. This Court understands that video presentation of evidence is a convenient and cost-effective trial tool. To be considered on appeal, the transcript of the video deposition must be made a part of the record in the trial court and on appeal. 12 O.S.2001, § 3232.[6] In order to prevent inadmissible evidence from being presented to the jury, all objections raised during the deposition, or reserved for presentation to the trial judge at a later time, must be made and ruled upon **prior** to the video being played for the jury. 12. O.S.2001, § 2104(C); *Parris v. McCallay*, 1967 OK 40, ¶ 15, 424 P.2d 62, 67; *Tulsa Fruit Co. v. Lucas*, 1953 OK 65, ¶¶ 0, 24, 254 P.2d 788, 793. Objections that are raised or argued after the video deposition is shown to the jury are untimely and are waived. *Bane*, 1989 OK 140, ¶ 26, 786 P.2d at 1236. All arguments and rulings on those objections must be made a part of the trial record and transcribed for appellate review. *McKinney v. Parker*, 1960 OK 209, ¶¶ 0, 16, 355 P.2d 1037, 1040. To secure review of allegations of error concerning the video deposition itself, testimony given in the video deposition, or exhibits admitted through the video deposition, the record on appeal must show that

6. Section 3232(C) of title 12 of the Oklahoma Statutes provides: "Except as otherwise directed by the court, a party offering deposition testimony pursuant to this section may offer it in stenographic or nonstenographic form, but, if in nonstenographic form, the party shall also provide the court with a transcript of the portions so offered."

the transcript of the video deposition was admitted at trial. For meaningful appellate review, testimony which was not shown to the jury but included in the transcript submitted as part of the record on appeal must be clearly marked.

¶ 18 The video deposition in this case was shown to the jury without Hanna objecting before it was shown. After the deposition was shown to the jury, B–Star asked for admission into evidence of the exhibit of the damages. At which time, Hanna objected: "Judge, as we've not formally had the opportunity to interpose our objection, they were in the form of the transcript, but I'd simply like to renew that objection at this time." The trial court overruled the objection. The record is inconclusive as to whether a transcript was admitted at trial. Because Hanna has not presented any argument on appeal that the deposition or the exhibits admitted therewith were improperly admitted, their admission is not before this Court. *Reyes v. Reyes*, 2000 OK 72, n. 2, 12 P.3d 470, 472, n. 2, .

## VIII.  VERDICT SUPPORTED BY THE EVIDENCE

■ ¶ 19 Hanna complains that the evidence does not support the verdict. There is evidence on which a jury could find that Hanna contracted with B–Star to use Gedney's original formula and to refrain from making changes to the formula without Gedney's written permission. Without any preserved objection, the trial court instructed the jury that the parties agreed there was an oral implied contract. B–Star presented evidence that Hanna made changes to the formula without Gedney's written permission, Gedney stopped ordering the fire stop products from B–Star after the changes and the problems associated therewith, and B–Star suffered damages in an amount between $1,222,591.00 and $1,806,766.00 as a result of Hanna's unauthorized formula changes.

■ ¶ 20 Hanna's primary complaint that the award is not supported by the evidence regards the amount of damages. The amount of damages is a jury question. *Carris v. John R. Thomas and Assoc., P.C.*, 1995 OK 33, ¶ 15, 896 P.2d 522, 529. "[W]here the

amount of the verdict is within the limits of the evidence, we will not invade the jury's province and substitute our judgment as a fact-finding tribunal." *Fowler v. Lincoln County Conservation Dist.*, 2000 OK 96, ¶ 18, 15 P.3d 502, 508. There was competent evidence on which the jury could award B–Star damages in the amount of $1,222,591.00.

## IX.  EXCESSIVENESS OF THE DAMAGE AWARD

¶ 21 Without evidentiary support, Hanna complains that the damages were so excessive as to appear to have been given under the influence of passion or prejudice. B–Star presented evidence that its damages ranged from $1,222,591.00 and $1,806,766.00. The jury rendered a general verdict for B–Star of $1,222,591.00, the lower of the range. Because we find that the damage award was supported by the evidence, it is not so excessive as to appear to have been given under the influence of passion or prejudice. *Dodson v. Henderson Properties, Inc.*, 1985 OK 71, ¶ 6, 708 P.2d 1064, 1066.

## X.  JURY INSTRUCTIONS

■ ¶ 22 Rule 1.11(e)(1) provides: "Where a party complains of an instruction given or refused, the party shall cite to the place in the record on appeal where said instruction may be found, together with the objection thereto." 12 O.S.2001, ch. 1, app., rule 1.11(e)(1). Hanna fails in its brief in chief to direct this Court's attention to any particular instruction as to which it alleges error. Further, Hanna fails to cite to the place in the record where it objected. Because Hanna has failed to preserve its objections to the instructions for this Court's review, we review for fundamental error. *Sellars v. McCullough*, 1989 OK 155, ¶¶ 9–10, 784 P.2d 1060, 1062–63.

■ ¶ 23 It is the trial court's duty "to give instructions which accurately reflect the law...." *Id.* Fundamental error occurs when the trial court does not accurately instruct on the law. *Id.* Having reviewed the instructions, we conclude that there was no prejudi-

cial misstatement of law appearing in the instructions and, thus, no fundamental error.

## XI.  TESTIMONY

¶ 24 Hanna complains about the exclusion of testimony of Raymond Giles, Tulsa Rubber Company's president. Tulsa Rubber Company, like B–Star manufactured fire stop products for Gedney. However, Tulsa Rubber Company used a different manufacturing process. Rule 1.11(e)(1) provides: "Where a party complains of the admission or rejection of testimony, that party shall set out the testimony to the admission or rejection of which the party complains, stating specifically the objections thereto." 12 O.S.2001, ch. 1, app., rule 1.11(e)(1).  Hanna has failed to set out the rejected testimony in its brief.

¶ 25 An examination of the record shows that Hanna offered the testimony of Raymond Giles to show Tulsa Rubber Company's profit margin. B–Star objected based on its relevancy, based on Mr. Giles not being an accountant, and based on the testimony not being included in the pretrial order. The trial court sustained the objection unless Hanna could lay a proper foundation by showing similarities. Hanna then asked if Tulsa Rubber Company was manufacturing the same product as B–Star and if Mr. Giles was familiar with the profit margins one could expect from manufacturers of similar products. B–Star again objected, and the trial court again sustained the objection.

¶ 26 The trial court has discretion to admit or exclude "evidence based on the judge's assessment of its relevance and reliability." *Myers,* 2002 OK 60 at ¶ 36, 52 P.3d at 1033. It was within the trial court's discretion to exclude the evidence until Hanna laid the proper foundation by showing the similarities in Tulsa Rubber Company and B–Star and until Hanna showed the similarities in the methods of productions. *Id.* at ¶¶ 36, 37, p. 1033. We find no abuse of discretion in the trial court's decision to exclude the testimony.

## XII.  CONCLUSION

¶ 27 The determination of the amount of damages is a jury question. The verdict is supported by the evidence. We find no abuse of discretion in the trial court's denial of the motion for a new trial. Applying rule 1.11, Hanna has failed to establish any reversible error in the proceedings before the trial court. Thus, we vacate the Court of Civil Appeals' opinion and affirm the trial court's judgment.

COURT OF CIVIL APPEALS' OPINION VACATED; TRIAL COURT'S JUDGMENT AFFIRMED.

### ORDER

WATT, Chief Justice.

The 22 March 2005 motion by appellee to strike rehearing petition as untimely, treated here as a motion to dismiss that petition, is denied. Constitutional mandate for uniformity of procedure, imposed by the provisions of Art. 5 § 46, Okl. Const., inexorably requires that the terms of 12 O.S.2001 § 990 A(B) be extended to govern the timeliness of filing petitions for rehearing both in this Court as well as in the Court of Civil Appeals. In short, *the statutory mailbox rule is hereby declared effective for application to the timeliness of filing petitions for rehearing in the Court of Civil Appeals as well as in this Court. Horvat v. State, ex rel., DOC, 2004 OK CIV APP 59, 95 P.3d 190 (released for publication by the Supreme Court of Oklahoma).*

¶ 28 WATT, C.J., WINCHESTER, V.C.J., LAVENDER, HARGRAVE, OPALA, KAUGER, EDMONDSON, JJ., concur.

¶ 29 COLBERT, J., disqualified.

All Justices Concur.