130 P.3d 245 (2006)
2006 OK 5
In the Matter of J.D.H., J.H., K.M.H., and W.E.L., Alleged Deprived Children.
Irene D.H., Natural Mother, Appellant,
v.
The State of Oklahoma, Appellee.
No. 100,558.
Supreme Court of Oklahoma.
January 24, 2006.
Julie McMahon, Assistant Public Defender, Tulsa, OK, for Minor Children.
David C. Morse, Tulsa, OK, for Appellant.
Tim Harris, District Attorney, and Tara Britt, Assistant District Attorney, Tulsa, OK, for the State of Oklahoma.
*246 ¶ 0 In adjudicating four minor children as deprived, the trial court admitted testimony by a therapist repeating statements made by one of the children. The Court of Civil Appeals, Division II, held that the testimony did not qualify for the "medical diagnosis or treatment" exception to the hearsay rule, 12 O.S. Supp.2005 § 2803(4), and that there was no evidence to support the deprived adjudication of the youngest two children. We granted the State's petition for certiorari and hold that the testimony was properly admitted and the record otherwise contains competent evidence to support the trial court's adjudication of all four children.
COURT OF CIVIL APPEALS' OPINION VACATED; TRIAL COURT'S ORDER AFFIRMED.
COLBERT, J.
¶ 1 The subjects of this litigation are the children of Irene D.H. (Mother): WELborn December 23, 1990; JDHborn February 26, 1994; KMHborn April 3, 1999; and JHborn May 16, 2002. Police officers took WEL and JDH into protective custody on September 8, 2003, when they reported that Mother had locked them out of the family home and that Mother's boyfriend had struck JDH with a belt. This resulted in the family's fourth referral to the Department of Human Services (DHS) within six months alleging abuse and/or neglect of the children. DHS sought and received emergency protective custody of all four children.
¶ 2 The State filed a petition seeking the children's adjudication as deprived, and a court-appointed referee presided over an evidentiary hearing on December 18, 2003. The State called three witnesses, a DHS investigator, WEL's therapist, and WEL's probation counselor. The State also offered one exhibit, a court order requiring "Boyfriend not to be in home until he comes to court and not to discipline [WEL]." Mother's attorney stipulated that Mother had been ordered to remove her boyfriend from the home. The referee denied Mother's demurrer to the State's evidence and Mother called no witnesses of her own. The children's attorney also called no witnesses. The referee ruled in favor of the State's petition and recommended a finding that all four children were deprived. The trial judge denied Mother's objections to the referee's recommendation and entered a final order declaring all four children deprived.
¶ 3 Mother raised four propositions of error on appeal: (1) the referee erred in admitting hearsay; (2) the referee erred in denying her demurrer; (3) the order was not supported by evidence; and (4) the statutory authority under which the referee acted was an unconstitutional delegation of power. The Court of Civil Appeals affirmed in part and reversed in part, holding that the referee had proper authority to conduct the hearing but should not have admitted the hearsay and that there was insufficient evidence to support *247 the adjudication of KMH and JH. The State filed a petition for certiorari which we granted. Upon a full review of the appellate record, we vacate the Court of Civil Appeals' opinion and affirm the trial court's order.

BURDEN OF PROOF AND STANDARDS OF REVIEW
¶ 4 The State must support the allegations in a petition seeking the adjudication of a child as deprived by a preponderance of the evidence establishing that "it is in the best interests of the child and the public that the child be made a ward of the court."[1] 10 O.S.2001 § 7003-4.5(A); In re J.B., 1982 OK 40, 643 P.2d 306. On appeal from an order declaring a child deprived, we will affirm the trial court's findings if they are supported by competent evidence. In re T.R.W., 1985 OK 99, ¶ 13, 722 P.2d 1197, 1200; In re A.D.W., 2000 OK CIV APP 110, ¶¶ 8-15, 12 P.3d 972, 975-76, cert. denied. The trial court's decision to admit or exclude evidence will not be reversed on appeal in the absence of a clear abuse of discretion. B-Star, Inc. v. Polyone Corp., 2005 OK 8, ¶ 13, 114 P.3d 1082, 1085; see also Kerr v. Clary, 2001 OK 90, ¶ 15, 37 P.3d 841, 844 (applying abuse of discretion standard to admission of hearsay).

DISCUSSION

I. Evidence
¶ 5 The uncontradicted evidence admitted without objection at trial was as follows.[2] Mother and her children were the subjects of four referrals to DHS from March 2003 until September 8, 2003. The first three referrals resulted in the recommendation of services but no formal action. During this period, WEL was on probation for an offense not specified in the record here. He appeared monthly before the juvenile court and received regular counseling from a court-appointed, home-based therapist with the goal of "anger management, communication skills, and working on resolving some of the angry, resentful feelings he had about his history." In addition, he met with a probation counselor. Both of these individuals had the responsibility and authority to address issues arising in the family as well as with WEL. They visited the home, interacted and counseled frequently with Mother, and offered other support and services as necessary.
¶ 6 DHS's investigator testified that the first referral occurred in March when WEL was placed in protective custody upon allegations of neglect by Mother, physical abuse by an aunt, and substance abuse by both women. DHS could not verify WEL's allegations of substance abuse, but recommended services in response to the other allegations. Thereafter, WEL lived with an aunt for several weeks.[3] Mother submitted to drug screening in May at the request of WEL's probation counselor and tested positive for cocaine. She was admitted to in-patient treatment but left before completing it.
¶ 7 When WEL returned home in July, his ongoing therapy was expanded to include family therapy. According to his therapist, WEL was "very excited" to return home to his Mother and siblings, but displayed outbursts of anger and increasing stress the longer he remained. His stress increased when Mother's boyfriend "became involved and was around the house and was helping toaccording to [Mother], helping [Mother] out to discipline [WEL]." The therapist testified that there were ongoing concerns that WEL was in danger of being harmed, although she never saw the boyfriend hit him. She denied any concern that WEL was in danger of harming his siblings and testified *248 that she frequently observed him taking care of his baby brother.
¶ 8 According to the therapist, Mother was not cooperative in family therapy and resisted her recommendation that WEL's individual therapy be increased to three times per week when school started despite the therapist's willingness to come to the home and otherwise accommodate Mother's schedule. WEL's probation counselor testified similarly that Mother resisted his efforts to help the family and indicated he should focus only on WEL. Both professionals testified to a growing concern about the family and Mother's unwillingness to accept assistance when it was offered.
¶ 9 DHS received two additional referrals about the family in the middle of August. The first concerned alleged neglect by Mother, alleged sexual abuse of KMH by WEL, and a suicide attempt and/or threat by WEL. WEL was taken by police officers to a facility for observation. WEL's probation counselor made the second August referral when he learned that Mother did not seek medical care for KMH even though that would have been the appropriate response given the nature of the alleged abuse. In response to these referrals, Mother told DHS's investigator she needed help taking care of her children and was looking for a place for WEL to stay. Although Mother signed a voluntary service agreement, no additional services were in place before the final referral resulting in this proceeding.
¶ 10 WEL appeared in juvenile court on September 8, 2003, and Mother was present when the judge entered an order excluding her boyfriend from the home as of that day. WEL's therapist called the home about 6 o'clock that evening:
I called to check on the family to see how things were going, make sure everything was okay. I had some concerns because [Mother] was pretty angry at the judge's order, and I had some concerns that [WEL] would have somethat she would really take it out on [WEL] when she got home.
The therapist testified that a man she identified as Mother's boyfriend answered the phone. When Mother came to the phone, she told the therapist that WEL was not at home.
¶ 11 The fourth and final referral occurred later that night when police officers transported WEL and JDH to the emergency shelter. The boys alleged that Mother locked them out when they left to call the police to report her boyfriend's continued presence. They also claimed the boyfriend had physically abused them. DHS's investigator was present at the medical examinations of the boys and observed marks on JDH. Mother admitted that she had asked her boyfriend to spank the children the day before because they were too noisy, but denied knowledge of any injury. Mother also asked how the investigator could know that the bruises on JDH were not caused by WEL. She denied locking the boys out of the home but admitted her boyfriend was still in the home that evening while he waited for a ride.
¶ 12 Finally, DHS's investigator testified that she attempted to contact Mother to obtain JDH's asthma medication after he was taken into emergency custody. Mother did not respond to her messages and JDH was hospitalized for four days as a result of not having his medication. Although the investigator informed Mother that JDH was in the hospital, Mother did not visit him while he was there. Mother also did not return phone calls offering visitation before the children were transferred into foster care.

II. Hearsay
¶ 13 The testimony that has become an appellate issue concerned statements made by WEL to his therapist on September 8th or 9th after he was taken to the shelter. The referee admitted the testimony over Mother's objections:
[WEL] said that he got home from school, that the boyfriend was still in the house, and that he left the apartment to go to a neighbor's to call the police, I assume to tell them that the boyfriend was still in the house, then went back to the apartment and was locked out and couldn't get back in.
*249 The therapist also testified that WEL reported that the boyfriend had hit him before and that WEL did not vary his story until their therapy sessions ended about one month later when WEL was transferred into therapeutic foster care.
¶ 14 There is no question that the testimony was hearsay because it was offered "to prove the truth of the matter asserted." See 12 O.S. Supp.2005 § 2801(A)(3). The referee admitted the testimony under the exception to the hearsay rule allowing the admission of "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain or sensations, if reasonably pertinent to diagnosis or treatment." 12 O.S. Supp.2005 § 2803(4). Although this Court has never addressed this particular exception, the Oklahoma Court of Criminal Appeals has adopted a two-part test for its application: (1) whether the declarant's apparent motive was consistent with receiving medical care; and (2) whether it was reasonable for a medical professional to rely on that statement in making a diagnosis or treatment. Kennedy v. State, 1992 OK CR 67, ¶ 11, 839 P.2d 667, 670. The Court of Civil Appeals employed the same test here.
¶ 15 The referee concluded that the therapist was qualified as a medical professional for purposes of the exception. The therapist held her bachelor's and master's degrees in social work, her master's degree had a focus on clinical counseling, and she was under supervision for her clinical license in social work. The Court of Civil Appeals, however, concluded the therapist's "assistance and counseling" were not medical treatment and WEL's statements to her were not made for the purposes of medical treatment because his needs had already been assessed and the counseling goals had already been established. In reaching this conclusion, it relied on a Texas case where the court disallowed statements made during therapy. Jones v. State, 92 S.W.3d 619 (Tex.App.2002). After observing that statements made with the motive of obtaining proper medical care have "`special guarantees of credibility,'" the Texas appellate court held it an abuse of discretion to admit testimony about statements made during therapy because a patient's selfish motive to be truthful "is no longer present once a diagnosis has been made and treatment has begun." Id. at 623-24 (quoting White v. Illinois, 502 U.S. 346, 356, 112 S.Ct. 736, 743, 116 L.Ed.2d 848 (1992)).
¶ 16 Although Jones is well-reasoned, its approach is not the only well-reasoned approach. Other jurisdictions, as well as other Texas courts, have admitted testimony of statements made during therapy under circumstances similar to those presented here. State v. Geboy, 145 Ohio App.3d 706, 764 N.E.2d 451 (2001), appeal denied, 94 Ohio St.3d 1410, 759 N.E.2d 787 (2001)(admitting statements to mental health counselor); Allen v. State, 247 Ga.App. 10, 543 S.E.2d 45 (2000), cert. denied (admitting statements to licensed professional counselor); Gohring v. State, 967 S.W.2d 459 (Tex.App.1998)(admitting statements to drama therapist, but not social worker in role of investigator); In re Dependency of M.P., 76 Wash.App. 87, 882 P.2d 1180 (1994)(admitting statements to sex abuse therapist). In each case, the appellate court's decision to approve the trial court's admission of the testimony depended on the unique circumstances presented.
¶ 17 We find those cases more applicable to this situation. While WEL's therapist was not a medical doctor, she was a qualified mental health professional whose involvement with this child was based on his need for treatment for emotional problems. In re C. & K., 121 Or.App. 264, 855 P.2d 171, 180 (1993)(statements to mental health professional); U.S. v. Newman, 965 F.2d 206, 210 (7th Cir.), cert. denied 506 U.S. 976, 113 S.Ct. 470, 121 L.Ed.2d 377 (1992)(statements to psychologist); U.S. v. DeNoyer, 811 F.2d 436 (8th Cir.1987)(statements to social worker). The therapist's testimony provided the context in which WEL made his statements, establishing her ongoing therapeutic relationship with WEL as he re-integrated into his family's home and Mother's boyfriend entered the picture. She testified about WEL's growing stress response to the boyfriend's presence and his efforts to discipline WEL. The therapist's role was to help WEL manage his anger and react appropriately which would entail identifying the causes of *250 WEL's feelings and helping him determine appropriate reasons for anger and frustration as well as appropriate responses. The boyfriend's presence and Mother's behavior with WEL in relation to her boyfriend were relevant topics for the therapy. WEL's statement that Mother locked him out of his home when he complained about the boyfriend's continued presence, therefore, is "reasonably pertinent" to his treatment by the therapist. 12 O.S. Supp.2005 § 2803(4).
¶ 18 While there is no guarantee that WEL's statements to the therapist were truthful, the circumstances provide the requisite reassurance that WEL had a motive to tell his therapist the truth. Jones, 92 S.W.3d at 623. Although the treatment goals were already established, the information WEL continued to offer his counselor was vital to her evaluation of the continued appropriateness of those goals and WEL's progress. The consistency with which WEL offered his observations and feelings militates in favor of the reliability of his statements. M.P., 882 P.2d at 1184. This is no different than a patient's statements to a physician to provide feedback about the effectiveness of a drug therapy or information about new physical symptoms. The fact that the physician has already made an initial diagnosis and formulated a treatment plan does not mean that subsequent statements are not also for the purposes of "medical diagnosis or treatment."
¶ 19 In addition, the referee who heard and evaluated the evidence demonstrated a full working knowledge of the hearsay rules and exceptions and did not admit all of the hearsay offered. The nature of WEL's allegations were already in the record through other testimony and form a relatively minor part of the evidence of the situation in the home. There is no reason to believe that the referee placed an undue emphasis on the statements of a young boy in unquestionably difficult circumstances. While admitting such testimony might not always be appropriate, the unique circumstances presented here lead us to conclude that the admission of the therapist's testimony was not a clear abuse of discretion. B-Star, 2005 OK 8, ¶ 13, 114 P.3d at 1085.
¶ 20 Finally, WEL's statements established only one small piece of additional evidence. Although Mother has asserted that the therapist's testimony also impermissibly established: (1) that an adult male, whom she believed to be Mother's boyfriend, answered the phone when the therapist called the home in the evening after Mother was ordered to remove the boyfriend from the home; and (2) that the boyfriend was still in the home when WEL returned home from school that day, that evidence was properly admitted. The first statement is, quite simply, not hearsay. It is an observation made by the witness based on the voice of the person who answered the phone. The second statement not only follows from the first, but there was other testimony, admitted without objection, that Mother acknowledged to DHS's investigator that her boyfriend was still in the home that evening. The only unique evidence added by WEL's statements to his therapist was his direct assertion that Mother locked him out, although even the fact of that allegation was included in other evidence.

III. Competent Evidence
¶ 21 While there is no evidence that Mother intentionally abused or harmed her children, the record contains competent evidence that she did not provide an appropriate level of care and resisted attempts to provide services to help her improve the situation even as she admitted that she needed help. There is competent evidence that WEL was deprived because of abuse and neglect, that JDH was deprived because of abuse, neglect, and failure to provide necessary medication, and that KMH was deprived because of neglect, all as defined by 10 O.S. Supp.2005 § 7001-1.3(A)(14)(b-c). Although there is no direct evidence that JH was abused or neglected, the existence of significant issues of neglect as to the older three children supports the conclusion that Mother's capacity to care for JH was similarly compromised.[4]See 10 O.S.2001 § 7003-8.5 *251 (allowing immediate action if a child or a sibling of a child is in immediate danger). We are directed by statute to liberally construe the Children's Code to carry out its purpose that "[t]he paramount consideration in all proceedings concerning a child alleged or found to be deprived is the health and safety and the best interests of the child." 10 O.S.2001 § 7001-1.2 ("right to family integrity, preservation or reunification" limited by children's right "to be protected from abuse and neglect"); see also State ex rel. Dep't of Human Servs. v. Colclazier, 1997 OK 134, ¶ 9, 950 P.2d 824, 828, In re C.T., 1999 OK CIV APP 55, ¶ 7, 983 P.2d 523, 525 (focus of adjudication proceeding is on child's status, not parents').
¶ 22 The testimony by the three professionals hereDHS's investigator, the therapist, and the probation counselorindicated an initial and overriding compassion for Mother and an understanding that she was having real difficulties coping with four children, including one child with behavioral issues. At the same time, they each indicated that Mother's tendency was to blame WEL for all of the family's problems (without considering the possible source of those problems) and to resist their efforts to involve her in addressing the problems in the family as a whole. They also testified to a growing systemic concern about the well-being of the children and Mother's ability to cope.
¶ 23 Mother's attorney argues that the State should have called Mother as a witness to allow her to give a better account of the circumstances, but the State was under no obligation to do so. Mother chose not to testify or offer any evidence to explain her situation or provide a better context for the State's evidence. Having done so, she cannot complain on appeal that the State's evidence did not present the whole story. In re K.L.H., 1993 OK CIV APP 127, ¶ 15, 858 P.2d 1296, 1298.

CONCLUSION
¶ 24 Our level of review is less than the clear and convincing standard we would apply if this were a termination proceeding. J.B., 1982 OK 40, ¶ 7, 643 P.2d at 308-09; In re S.B.C., 2002 OK 83, ¶ 7, 64 P.3d 1080, 1082. We search here for any competent evidence to support the trial court's order declaring the children deprived. T.R.W., 1985 OK 99, ¶ 13, 722 P.2d at 1200.
[T]he risk of an erroneous proceeding is less onerous on a parent in an adjudicatory proceeding than in a termination proceeding. Contrary to this, the risk to a child and thus the State, is greater in an adjudicatory proceeding if a removal from custody of a parent where abuse is a ground for adjudication of deprived status is not effected by virtue of a greater standard of proof.
J.B., 1982 OK 40, ¶ 7, 643 P.2d at 308-09 (citation omitted). As Mother's attorney observed in reply to the State's petition for certiorari, there is no bright line here; "[t]hese kind of situations are shades of gray rather than black and white." DHS's investigator monitored this situation and, along with other professionals involved through the juvenile court, observed a family growing increasingly unstable. They all indicated their reluctance to take this step and their ultimate conclusion that it was necessary. The record contains competent evidence to support the trial court's judgment declaring Mother's children deprived.

COURT OF CIVIL APPEALS' OPINION VACATED; TRIAL COURT'S ORDER AFFIRMED.
WATT, C.J., WINCHESTER, V.C.J., LAVENDER, KAUGER, EDMONDSON, TAYLOR, JJ., concur.
HARGRAVE, OPALA, JJ., concur in part, dissent in part.
OPALA, J., dissenting in part.
I would deny certiorari and let the opinion promulgated herein by the Court of Civil Appeals stand.
NOTES
[1] We have rejected the argument that we should require proof of a deprived petition by clear and convincing evidence, the standard applied in actions to terminate parental rights. In re J.B., 1982 OK 40, ¶ 7, 643 P.2d 306, 308-09; see also In re S.B.C., 2002 OK 83, ¶ 7, 64 P.3d 1080, 1082 (appellate court, like trial court, must search record for clear and convincing proof when terminating parental rights).
[2] Mother argued on appeal that the State's entire case was based on hearsay. Even if that were true, Mother's attorney failed to object to the majority of the testimony and, therefore, waived any error in its admission. 12 O.S.2001 § 2104(A)(1).
[3] It is not clear in the record whether WEL lived with the same aunt who allegedly had physically abused him or with another aunt.
[4] We reject, however, the State's blanket assertion that, if a home is unfit for one child, it is per se unfit for all of the other children in the family. The only case to which the State cites for this proposition, Davis v. Davis, 1985 OK 85, 708 P.2d 1102, is inapposite and the specific language on which the State relies is taken from a superseded statute.