OSCN Found Document:CARTER v. PENDLEY

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 CARTER v. PENDLEY
2024 OK CIV APP 3
Case Number: 120153
Decided: 05/12/2023
Mandate Issued: 02/01/2024
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II

Cite as: 2024 OK CIV APP 3, __ P.3d __

 
GEORGE CARTER and BERDINE CARTER, Plaintiffs/Appellants,
v.
CORY MICHAEL PENDLEY, Defendant/Appellee.
APPEAL FROM THE DISTRICT COURT OF
STEPHENS COUNTY, OKLAHOMA
HONORABLE KEN GRAHAM, TRIAL JUDGE
AFFIRMED
Stephen H. Buzin, BUZIN LAW OFFICE, Chickasha, Oklahoma and
Clifton D. Naifeh, NAIFEH & ASSOCIATES, A PROFESSIONAL CORPORATION, Norman, Oklahoma, for Plaintiffs/Appellants
Stephanie L. Khoury, GIVENS LAW FIRM, Oklahoma City, Oklahoma, for Defendant/Appellee
JANE P. WISEMAN, PRESIDING JUDGE:
¶1 Plaintiffs George Carter and Berdine Carter appeal from a judgment entered on a jury's verdict finding in favor of George awarding him $0 and finding in favor of Berdine awarding her $2,000. After full review of the record and relevant law, we affirm the judgment.
FACTS AND PROCEDURAL BACKGROUND
¶2 On April 9, 2016, Plaintiffs were travelling southbound on U.S. Highway 81 in Marlow, Oklahoma. As they approached the intersection of U.S. Highway 81 and Ballpark Road to turn left onto Ballpark Road, Berdine stopped, yielding to an oncoming northbound vehicle, before attempting to make the turn. At the same time, Defendant Cory Michael Pendley was travelling westbound on Ballpark Road, approaching the intersection. He stopped at the intersection and looking to the right, he observed a southbound vehicle approximately 40 yards away and then looking to his left, he saw a northbound vehicle approximately a mile away. He waited until the southbound vehicle passed, then pulled forward into the intersection. Plaintiffs' vehicle was behind the southbound vehicle observed by Defendant. Defendant never saw Plaintiffs' vehicle until he pulled into the intersection. Once he saw Plaintiffs' vehicle, he slammed on the brakes, but could not stop in time and hit Plaintiffs' truck.
¶3 Plaintiffs filed the present action against Defendant claiming his actions caused them "bodily injuries and damages." Plaintiffs further claim that Defendant's "acts in causing the collision were either grossly negligent or in reckless disregard for the rights and safety of others[,] intentional and/or life threatening." Defendant answered with affirmative defenses including "[w]hether [they] suffer from any pre-existing or post-arising medical condition will be developed during discovery and Defendant herein reserves all defenses in that regard."
¶4 Before trial began, Defendant admitted fault in causing the accident. Because liability had been admitted, the jury trial proceeded to determine only the issue of damages. The jury awarded $0 in damages to George Carter and $2,000 in damages to Berdine Carter.
¶5 Plaintiffs appeal.
STANDARD OF REVIEW
¶6 Plaintiffs pursue reversal on three grounds: improper closing arguments by Defendant's counsel, Defendant's medical expert's improper reference to religious beliefs and opinions, and the trial court's refusal to instruct on punitive damages. We will review these grounds under the following standards.
¶7 "A counsel's conduct is 'a matter to be left largely within the discretion of the trial judge.'" Nye v. BNSF Ry. Co., 2018 OK 51, ¶ 39, 428 P.3d 863 (quoting Middlebrook v. Imler, Tenny & Kugler M.D.'s, Inc., 1985 OK 66, ¶ 33, 713 P.2d 572). "Ordinarily, a reviewing court will not reverse based upon alleged attorney misconduct unless such conduct 'substantially influences the verdict or denies the defendant a fair trial.'" Id.
¶8 "'A trial court has discretion in deciding whether proffered evidence is relevant and, if so, whether it should be admitted, and a judgment will not be reversed based on a trial judge's ruling to admit or exclude evidence absent a clear abuse of discretion.'" Wright v. Board of Cnty. Comm'rs of Carter Cnty., 2020 OK CIV APP 46, ¶ 11, 475 P.3d 409 (quoting Myers v. Missouri Pac. R.R. Co., 2002 OK 60, ¶ 36, 52 P.3d 1014).
¶9 "When reviewing jury instructions, the standard of review requires the consideration of the accuracy of the statement of law as well as the applicability of the instructions to the issues." Johnson v. Ford Motor Co., 2002 OK 24, ¶ 16, 45 P.3d 86. "The test of reversible error in instructions is whether the jury was misled to the extent of rendering a different verdict than it would have rendered, if the alleged errors had not occurred." Id.
ANALYSIS

I. Closing Argument and the "Unclean Hands" Doctrine[1]

¶10 Plaintiffs first urge that defense counsel's insertion of the "unclean hands" doctrine during closing argument "was highly prejudicial, inflammatory, and improper." Plaintiffs take issue with the following remarks by defense counsel:
The reason I brought up Mrs. Carter's other accidents, if this trial was going to revolve around rules of the road, it would be appropriate to talk about this legal theory they teach in law school called "unclean hands."
. . . .
Plaintiffs' counsel: Judge, I'm sorry. That's not relevant to these issues.
. . . .
The Court: This--this is argument counsel.
. . . .
The Court: Okay. I--I ruled on your objection.
Defense counsel: And if you're going to come into court and blame my client for something, you also did the exact same way yourself, it's unclean hands.
Plaintiffs' counsel: This is not an equity court, Judge.
The Court: I understand that.
Although Plaintiffs' counsel states he objected, he argues the trial court overruled his objection as shown above.
¶11 "Attorneys have wide latitude in opening and closing statements, subject to the trial court's control, and limitation of the scope of the arguments is within the trial court's discretion." Covel v. Rodriguez, 2012 OK 5, ¶ 22, 272 P.3d 705. "An admonition to the jury to disregard an improper argument cures any prejudice that might be created thereby since it cannot be presumed as a matter of law that the jury will fail to heed the admonition given by the court." Id. "In order for the alleged misconduct of counsel in argument to the jury to effect a reversal of the judgment it must appear that substantial prejudice resulted therefrom and that the jury was influenced thereby to the material detriment of the party complaining." Id.; see also Nye, 2018 OK 51, ¶ 39 (holding that "[o]rdinarily, a reviewing court will not reverse based upon alleged attorney misconduct unless such conduct 'substantially influences the verdict or denies the defendant a fair trial'"). "The ultimate question is whether counsel's remarks result in actual prejudice." Middlebrook, 1985 OK 66, ¶ 33. "This determination rests with the trial judge and the appellate court will not reverse that determination unless it clearly appears that the verdict was so influenced, considering all pertinent facts and circumstances in the record." Id.
¶12 Plaintiffs failed to meet this burden. First, the trial court directed the jury to return a verdict in favor of Plaintiffs leaving the jury to determine only damages caused by the collision. Instruction Number 12 to the jury stated: "You are directed to return a verdict in favor of the Plaintiff[s] and against the Defendant." Instruction Number 13 explains to the jury in relevant part that because the trial court directed them to return a verdict in favor of Plaintiffs, they "now must fix the amount of their damages . . . that will reasonably and fairly compensate them for the injury sustained as a result of the negligence of the Defendant, Cory Pendley."
¶13 Berdine's testimony, medical records, and her expert's testimony regarding her pre-existing versus post-accident injuries also support the jury's damages award. Berdine testified that they went to Duncan Regional Medical Center the day of the accident and she did not see another health care provider until May 5, 2016, which was a previously scheduled appointment with her primary care physician to address her "preexisting problems." She also admitted that the
June 16, 2016 injection she received was unrelated to the accident. She could not say whether the remaining two injections that summer were related to the accident or to her previous injuries. According to Berdine, she had several doctors' appointments in 2016 following the accident, but admitted they were either unrelated to the accident or she was not sure whether they were related to the accident. About 14 months after the April 2016 accident, she was treated by a chiropractor in June through July 2017. She agreed her chiropractor provided the same treatment he had given her in 2014 and 2015, and she could not say "for sure" if the treatment given in 2017 was related to her accident or her previous problems. She had back surgery three years after the accident, and during those three years, she had been involved in other motor vehicle accidents. She testified she did not consider herself disabled from the accident due to an aggravation of her pre-existing problems. She also testified she and her husband were not making a claim for lost wages in this case.
¶14 According to Berdine, her husband, George Carter, had both low-back issues and short-term memory problems before the accident. She expressed no knowledge of any record before May 4, 2019, showing that her husband had a knot on his head. George did not report a head injury or a knot on his head until May 4, 2019, more than three years after the accident, and George did not start physical therapy to help with walking until 13 months after the accident. She states George did not have any sort of surgery arising from this accident.
¶15 Based on the evidence presented, the jury had ample relevant facts on which to base its damages verdict, and we find no basis on which to conclude the verdict was substantially influenced by counsel's remarks referring to the unclean hands doctrine.

II. Testimony of Dr. Low

¶16 Plaintiffs next assert the trial court erred in failing to exclude certain parts of the deposition testimony of Dr. Warren Low, Defendant's medical expert, in which he makes religious comments, "for purposes of enhancing his credibility," citing a violation of 12 O.S.2021 § 2610. During cross-examination, Plaintiffs' counsel asked Dr. Low several questions that defense counsel maintains were "designed to determine and/or demonstrate for the jury, any biases that might have affected his medical opinion rendered in this case." This is the testimony in question:
Q. Doctor, is it important that medical science be used with integrity and honesty?
A. Everything in life should be.
Q. And why is that?
A. Because we're all sinful human beings who tend to work things to our own advantage without some, either internal governance or external governance.
Q. And, Doctor, this is a very important question: Do you concede that money paid to a defense medical examiner can create bias?
A. I think, in some individuals, it could.
Q. And do you agree that a medical investigation must be a neutral search for the truth and not just a search for a conclusion that is wanted or expected?
A. I would say that's why my wife and I spent time in prayer this morning that I would tell things truthfully and accurately.
Mr. Naifeh: Move to strike, non-responsive.
. . . .
Q. And you would agree that the Code of Ethics is a set of rules to protect the community, correct?
A. That's correct.
Q. And do you think you must abide by these rules?
A. I do.
Q. Do these rules say you should not lie or stretch the truth?
A. God says that.
Q. Do these rules say-- 
Mr. Naifeh: Move to strike.
(Emphasis added.) Although Plaintiffs' counsel did not object to Dr. Low's testimony that "we're all sinful human beings" during the video deposition, counsel did object to the other two references in this exchange.
¶17 Plaintiffs also complain about defense counsel's "improper question" to Dr. Low about "a religious medical mission trip":
Q. My understanding is you also engaged in several medical missions over the years; is that correct?
A. Yes.
Q. Describe that to me.
A. Probably in most significant one, I went to Ukraine right after the fall of the Berlin Wall and taught the orthopedic surgeons at the University of Kiev how to do joint replacement surgery. And then I went back a number of years after that to make sure they knew what they were doing, basically.
And during that process, I--excuse me--didactic lectures at the University of Kiev and to their orthopedic surgeons and medical students and residents. And we operated on probably hundreds of Ukrainians. We helped the orthopedic surgeons there learn how to do that. 
A review of this testimony demonstrates there is no mention that the mission trip was "religious," but rather a "medical" one, and the response appears intended to describe areas of his medical background, experience and interest. We will not find the phrase and description of this "medical mission" without any religious reference a violation of 12 O.S.2021 § 2610.[2]
¶18 Before trial, Plaintiffs filed a motion in limine on this issue which the trial court denied. It appears most of Dr. Low's video trial deposition was played for the jury. At the conclusion of the deposition video, the jury was dismissed and the trial court heard objections from counsel.
[3] Plaintiffs' counsel re-urged his motion in limine which the trial court denied stating:
Okay. I'm overruling Mr. Naifeh's objection to the remark made by client. I think it was invited by
Mr. Naifeh's questioning, which I think was questioning the man's ethical--ethics.
¶19 Although 12 O.S.2021 § 2610 excludes a witness's religious beliefs or opinions when offered to impair or enhance the witness's credibility, it does not exclude such evidence to show interest or bias. Section 2610 provides:
Evidence of the beliefs or opinions of a witness on matters of religion is not admissible for the purpose of showing that by reason of their nature the witness's credibility is impaired or enhanced.
12 O.S.2021 § 2610.[4] And although the rule "prohibits inquiry into religious beliefs to show that the witness' character for truthfulness is affected by those beliefs; it would not foreclose inquiry for the purpose of showing interest or bias; such as disclosure of affiliation with a church which is a party to the litigation." 12 O.S.2021 § 2610 (Evidence Subcommittee's Note). "At common law, bias is defined as a relationship between a witness and a party which might cause the witness to slant his [or her] testimony for or against the party." U.S. v. DeSoto, 950 F.2d 626, n. 4 (10th Cir. 1991). "Credibility" is defined as "[w]orthiness of belief; that quality in a witness which renders his [or her] evidence worthy of belief." Credibility, Black's Law Dictionary 366 (6th ed. 1990).
¶20 The record shows Plaintiffs' counsel did not inquire into Dr. Low's religious beliefs or opinions which 12 O.S.2021 § 2610 expressly prohibits. Instead,
Dr. Low's answers during cross-examination were responses to Plaintiffs' counsel's attempts to demonstrate bias, answers which constitute an exception to the prohibition.
¶21 "All relevant evidence is admissible, unless the trial court determines that 'its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, undue delay, needless presentation of cumulative evidence, or unfair and harmful surprise.'" Myers v. Missouri Pac. R.R. Co., 2002 OK 60, ¶ 36, 52 P.3d 1014 (quoting 12 O.S.2001 § 2403)(footnote omitted). "A trial court has discretion in deciding whether proffered evidence is relevant and, if so, whether it should be admitted, and a judgment will not be reversed based on a trial judge's ruling to admit or exclude evidence absent a clear abuse of discretion." Id. After our review, we agree with the trial court that the testimony was permissible under the bias exception in § 2610 and did not subject Plaintiffs to unfair prejudice.
¶22 Plaintiffs also assert Dr. Low's religious statements "were evidentiary harpoons" which are "typically recognized in criminal cases." Plaintiffs quote Anderson v. State, 1982 OK CR 45, ¶ 3, 644 P.2d 108 (quoting Bruner v. State, 1980 OK CR 52, ¶ 16, 612 P.2d 1375), to describe an evidentiary harpoon:
A review of the case law reflects the presence of certain features when this Court has found an evidentiary harpoon: (1) they are generally made by experienced police officers; (2) they are voluntary statements; (3) they are wilfully jabbed rather than inadvertent; (4) they inject information indicating other crimes; (5) they are calculated to prejudice the defendant; and (6) they are prejudicial to the rights of the defendant on trial.
We see no analogy between the testimony in question and the features just quoted, and we affirm the trial court's evidentiary decision regarding Dr. Low's testimony.

III. Punitive Damages

¶23 Plaintiffs next propose trial court error for failing to instruct the jury on punitive damages. Plaintiffs state that "[t]he evidence in this case clearly shows Defendant was admittedly driving at a speed greater than that which would permit him to bring his vehicle to a stop within the assured clear distance ahead which is 'deemed reckless driving'" pursuant to 47 O.S.2021 § 11-901(A) which states:
It shall be deemed reckless driving for any person to drive a motor vehicle in a careless or wanton manner without regard for the safety of persons or property or in violation of the conditions outlined in Section 11-801 of this title.
Title 47 O.S.2021 § 11-801(A) states:
Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface and width of the highway and any other conditions then existing. No person shall drive any vehicle upon a highway at a speed greater than will permit the driver to bring it to a stop within the assured clear distance ahead.
Plaintiffs urge Defendant violated Section 11-801 which is deemed reckless driving pursuant to Section 11-901 because Defendant drove at a speed which did not allow him to stop within the assured clear distance ahead. Plaintiffs contend the jury should decide what conduct is "reckless regardless of statutory prohibition."
¶24 Pursuant to 23 O.S. § 9.1, "for punitive damages to be allowed there must be evidence, at a minimum, of reckless disregard toward another's rights from which malice and evil intent may be inferred." Badillo v. Mid Century Ins. Co., 2005 OK 48, ¶ 66, 121 P.3d 1080 (emphasis omitted). "Whether that showing has been made remains an issue of law for the trial court in its role as gatekeeper to determine, upon a defendant's challenge to the sufficiency of the evidence via a motion for directed verdict, whether there is competent evidence upon which a reasonable jury could find reckless disregard, from which malice and evil intent may be inferred." Id.
¶25 Pursuant to 23 O.S. § 9.1, the jury may award punitive damages if it finds by clear and convincing evidence that a defendant either (1) "has been guilty of reckless disregard for the rights of others" or (2) "has acted intentionally and with malice towards others." 23 O.S.2021 § 9.1(B)(1) and (C)(1). Oklahoma Uniform Jury Instruction No. 5.6 is titled "Exemplary or Punitive Damages--First Stage." It also defines "reckless disregard" and malice and states:
If you find in favor of [Plaintiff], and grant [him/her] actual damages, then you must also find by a separate verdict, whether [Defendant] (acted in reckless disregard of the rights of others) (and/or) (acted intentionally and with malice towards others).
[Plaintiff] has the burden of proving this by clear and convincing evidence. By that I mean that you must be persuaded, considering all the evidence in the case, that the proposition on which the party has this burden of proof is highly probable and free from serious doubt. 
[The conduct of [Defendant] was in reckless disregard of another's rights if [Defendant] was either aware, or did not care, that there was a substantial and unnecessary risk that [his/her/its] conduct would cause serious injury to others. In order for the conduct to be in reckless disregard of another's rights, it must have been unreasonable under the circumstances, and also there must have been a high probability that the conduct would cause serious harm to another person.]
[Malice involves either hatred, spite, or ill-will, or else the doing of a wrongful act intentionally without just cause or excuse.]
If you find that [Defendant] acted (in reckless disregard of the rights of others) or (intentionally and with malice towards others), you may award punitive damages against [Defendant] in a later part of this trial. If you find that [Defendant] did not act (in reckless disregard of the rights of others) or (intentionally and with malice towards others), you may not award punitive damages against [Defendant].
OUJI (Civil) No. 5.6 (emphasis added). The Notes on Use section states in part, "This instruction should be given when the jury retires to determine liability and the amount of actual damages if there has been a showing of reckless disregard or malice in an action for the breach of an obligation not arising from contract."
¶26 "Although both reckless disregard and intentional acts of malice may be the basis for a punitive damages award the OUJI instruction [5.6] clearly distinguishes the two." Gowens v. Barstow, 2015 OK 85, ¶ 20, 364 P.3d 644. "Additionally, the two are distinguished in statute." Id. "The statute concerning punitive damages provides lesser damages for acts constituting reckless disregard than for acts constituting malice." Id. "It is apparent that 'reckless disregard' is distinguishable from acts that clearly show malice or bad faith." Id. ¶ 21. "Acts performed with 'reckless disregard' do not automatically rise to a level constituting malice or bad faith." Id. "That is not to say that malice or bad faith can never be inferred from conduct exhibiting reckless disregard for the rights of others." Id.
¶27 After the jury instruction conference, the trial court denied Plaintiffs' request to submit punitive damages instructions finding:
I think--it's my opinion that the only evidence in this case that the--that the stop sign was ran [sic] is your client said that that's what he said he did. She testified she never saw him until he hit her--or until he was right there at her door, I think is what she said, but . . .
Every city and municipality I know of it's illegal to run or go through a stop sign or--or pull out in front of somebody from a stop sign, so I don't find that to be--to meet the standards of--of punitive. So I'm denying those motions for those reasons.
¶28 We conclude the trial court properly determined the evidence did not require submission of punitive damages to the jury. Defendant testified he did not intentionally cause the accident with Plaintiffs. He testified he was not in a hurry or running late getting to his grandmother's house. Defendant further testified he was not distracted "at the point of impact when the two vehicles came in contact with each other." Defendant testified he stopped at the intersection, looked out his passenger side window, "saw a car approximately 40 yards away," and felt it was unsafe to pull into the intersection at that point. He then "looked through [his] driver's-side window and saw a car way off, approximately almost a mile[,]" and felt it was far enough away to safely pull into the intersection. He then states that as he "was still looking out [his] driver's-side window, [he]--out [his] periphery, [he] saw the car [he'd] seen 40 yards away on [his] passenger's side cross [his] point of view and [he] started to pull forward." Plaintiffs' vehicle was also traveling south on Highway 81, but Defendant did not see their vehicle until "[a] split second before [he] hit it." According to Defendant, he was driving about five miles an hour when he hit Plaintiffs' vehicle and he thinks Plaintiffs' vehicle may have been in a blind spot created by his vehicle's A-Pillar[5] when he looked to his right. The record shows that Defendant had stopped at the intersection and looked both ways and that he was not distracted or in a hurry at the time of the accident. He failed to see Plaintiffs' vehicle until the last second before impact and tried to brake.
¶29 "[I]n vehicular cases, gross negligence sufficient to support punitive damages requires more than simple negligence or an accident resulting from a driver's inadvertence."[6] Myers v. Bhullar, 609 F.Supp.3d 1232, 1239 (W.D. Okla. 2022)(applying Oklahoma law on punitive damages). "[T]he mere happening of an accident as a result of inadvertence on the part of the responsible party is insufficient to constitute gross negligence." Hinds v. Warren Transp., Inc., 1994 OK CIV APP 52, ¶ 11, 882 P.2d 1099. "Only where there is evidence in the record supporting an inference of gross negligence or reckless disregard and/or indifference for the safety of others must the issue of punitive damages be submitted to the jury." Id. "'Reckless disregard' is not to be confused with inadvertent conduct." Thiry v. Armstrong World Indus., 1983 OK 28, ¶ 26, 661 P.2d 515. "To meet this standard, the [defendant] must either be aware of, or culpably indifferent to, an unnecessary risk of injury." Id.
¶30 We agree with the trial court that the evidence did not permit the submission of punitive damages to the jury. Plaintiffs failed to show by clear and convincing evidence that Defendant acted in "reckless disregard of the rights of others" or "acted intentionally and with malice towards others." And Plaintiffs failed to persuade the trial court that evidence of a failure to stop in time to avoid a collision at five miles per hour constitutes "reckless driving" in violation of 47 O.S.2021 §§ 11-801 and 11-901 that automatically entitled them to a punitive damages instruction. We agree with the trial court. The court properly performed its gatekeeping function to determine, on the question of punitive damages, whether there was clear and convincing evidence from which the jury could reasonably conclude that Defendant acted in reckless disregard of the rights of others. There was evidence of failure to pay sufficient attention to notice Plaintiffs in the intersection, but as the trial court concluded, there was no clear and convincing evidence of reckless disregard for others' rights--the evidence did not warrant the submission of punitive damages to the jury, and the trial court correctly refused to submit or instruct on punitive damages.
CONCLUSION
¶31 Finding no reversible error, we affirm the trial court's rulings.
¶32 AFFIRMED.
BARNES, V.C.J., and HIXON, J., concur.
FOOTNOTES
[1] "Unclean hands is an equitable defense against an equitable remedy." Wiggen Props., LLC v. ARCO Bldg., LLC, 2022 OK CIV APP 13, ¶ 58, 510 P.3d 1274. "Equity will not allow one with unclean hands to benefit from its wrongful act." Id. "He who seeks equity must do equity and come into court with clean hands." Id.
[2] The word "mission" has several meanings. For example, Merriam-Webster Dictionary defines "mission" as "a body of persons sent to perform a service or carry on an activity: such as a group sent to a foreign country to conduct diplomatic or political negotiations" or "a team of specialists or cultural leaders sent to a foreign country." It can also mean "a ministry commissioned by a religious organization to propagate . . . its faith or carry on humanitarian work." Mission, Merriam-Webster Dictionary, http://www.merriam-webster.com/dictionary/mission (last visited May 11, 2023).
[3] According to Plaintiffs' appellate brief, he did not re-urge his motion in limine on this issue until after the video deposition was played to the jury.
In order to prevent inadmissible evidence from being presented to the jury, all objections raised during the deposition, or reserved for presentation to the trial judge at a later time, must be made and ruled upon prior to the video being played for the jury. Objections that are raised or argued after the video deposition is shown to the jury are untimely and are waived.
B-Star, Inc. v. Polyone Corp., 2005 OK 8, ¶ 17, 114 P.3d 1082 (citations and emphasis omitted).
Because the trial transcript is not clear on this issue, we will address it.
[4] The Evidence Subcommittee's Notes state that 12 O.S.2021 § 2610 "is identical to the Federal rule." Because this statute nearly mirrors its federal counterpart, "we may look to relevant federal case law to assist us in interpreting the pertinent State provision." Heffron v. District Court of Oklahoma Cnty., 2003 OK 75, ¶ 13, 77 P.3d 1069.
[5] Defendant testified that the "A-Pillar" is the piece of metal between the front windshield and the passenger-side window.
[6] "Inadvertence" is defined as "[h]eedlessness; lack of attention; want of care; carelessness . . . ." Inadvertence, Black's Law Dictionary 759 (6th ed. 1990).

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA